[Civ. No. 1440.  Third Appellate District.—November 12, 1917.]

RICHARD WHITE, as Executor, etc., Respondent, v. JOSEPH W. HENDLEY, Appellant.

APPEAL—PREPARATION OF TRANSCRIPT—CERTIFICATION—CURE OF OMISSION TO ORDER PREPARATION.—Where on an appeal from a judgment the appellant filed within the required time a notice of intention and request for a transcript in accordance with the provisions of section 953a of the Code of Civil Procedure, and the court never ordered the reporter to prepare the transcript as required by such section, but the transcript was prepared and certified by the judge, the omission to order the preparation was cured by the certification.

ID.—ORDER DENYING NEW TRIAL—REVIEW—APPEAL FROM JUDGMENT.— Under the amendment of 1915 to section 956 of the Code of Civil Procedure, an order denying a motion for a new trial is reviewable on an appeal from the judgment.

ID.—ACTION TO CANCEL DEED—FRAUD—FINDING OUTSIDE OF ISSUE.— In an action to cancel a deed and a contract, a finding that defendant never intended to carry out his contract must be disregarded, where no issue of fraud was tendered by the pleadings, the sole issue being the failure of consideration.

ID.—DEED AND CONTRACT CONCERNING MINING CLAIM — CLAUSE CONCERNING WORKING OF MINE — COVENANT — PAROL EVIDENCE INADMISSIBLE.—A clause in a contract executed as a part of a deed of a mining claim providing that it is mutually agreed, that the grantee will undertake the opening up and development of the property at his own expense, does not create a condition subsequent, but a mere covenant, and in an action to cancel the deed and contract, it was error to admit parol to ascertain the meaning of the parties.

ID.—INEFFECTIVE TESTAMENTARY DISPOSITION — FINDING OUTSIDE OF ISSUE.—Where in an action to cancel a deed the complaint alleged that plaintiff "executed" the deed, and no issue was tendered of his intention that the deed should not take effect until his death, a finding that the deed was void as an ineffective testamentary disposition is not within the issues.

APPEAL from a judgment of the Superior Court of Butte County.  H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

George F. Jones, for Appellant.

W. K. Hays, for Respondent.

BURNETT, J.—This appeal is from the judgment in favor of the plaintiff in an action for the cancellation of a deed and contract executed by Joseph Hendley, now deceased, to defendant.

Joseph Hendley, having apparently become attached to his nephew, the defendant, on April 26, 1910, did "grant, bargain, sell, convey and confirm unto the party of the second part, and to his heirs and assigns forever, all his right, title, and interest in and to all that real property situate in the said County of Butte, State of California, bounded and described as follows, to wit: . . .

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

"To have and to hold all and singular the said premises together with the appurtenances unto the said party of the second part, and all his heirs and assigns forever. . . . "

It appears by the pleadings that the deed was properly executed, delivered, and recorded. On the same day the following contract was entered into between the parties:

"This agreement made and entered into this 26th day of April, 1910, by and between Joseph W. Hendley, of Peoria, State of Illinois, party of the first part, and Joseph Hendley, of the County of Butte, State of California, party of the second part, Witnesseth:

"That whereas the said party of the second part has this day granted and conveyed unto the said party of the first part by deed absolute and without condition all the real estate of said party of the second part situate in the county of Butte, State of California, consisting of all the right, title and interest of the party of the second part in and to that certain mining property situate in Morris Ravine, in said Butte County, and commonly known as the 'Joe Hendley Mine and Mining Property,' and

"Whereas it is understood that the said party of the second part shall during his lifetime occupy said premises as a place of residence, and shall obtain therefrom such income as may

be necessary to afford him a comfortable livelihood and living in accordance with his desires and conditions in life, and that during his lifetime said property shall be advantageously developed in a proper and systematic manner as a mining claim for the benefit of said party of the first part, and also for the benefit of the party of the second part for the purposes hereinabove stated.

"Now therefore it is hereby mutually agreed that the party of the first part will undertake the opening up and developing of said property as a mining claim at his own expense and free of cost and expense to the party of the second part, and in case, either before or after the full development of said property as a mining claim, in the judgment of the party of the second part it shall be advantageous to sell and dispose of said property for a valuable consideration and at a sum in excess of the amount expended thereon by the party of the first part, then and in that event the party of the first part will consent to such sale and join in executing any conveyance necessary therefor, provided that in case of such sale said party of the first part shall be reimbursed from the proceeds thereof for all moneys expended by him or expenses which he may have incurred in connection with the development of said property and a reasonable rate of interest thereon, it being further understood and agreed that the party of the first part is to have and receive the whole of the proceeds from the sale of said property except such amount thereof as may be necessary to provide for the care and maintenance of said party of the second part during his lifetime.

"It is fully understood and agreed that the intention of the parties herein is to give to the party of the first part the full and entire benefit of all the property of the party of the second part this day conveyed, with the right to proceed with the opening up and development thereof, and to obtain the full benefit to be derived therefrom save and except that the party of the second part is to be provided for during his lifetime.

"It is further understood and agreed that in case said party of the first part shall not survive the party of the second part, then and in that event the property described in said Deed is to be reconveyed to the party of the second part, subject, however, to the reimbursement of the party of the first

part for the amounts expended by him in the development of said property as hereinabove agreed. . . .

"Joseph W. Hendley.     (Seal)
"Joseph Hendley.        (Seal.)"

The court found that the deed and contract constituted one instrument; that the intention of Joseph Hendley was to provide for the development of the mine, and that the development of the mine was the consideration for the grant; that Joseph W. Hendley failed to perform the conditions provided, and never intended to perform them, and, hence, there being a failure of consideration and breach of condition subsequent, plaintiff was entitled to a cancellation of the deed. The court received in evidence the deposition of Joseph Hendley, in which is stated the intent with which he made the transfer, over the objection of defendant that it was parol evidence which tended to vary the terms of the written contract.

Appellant contends that the court erred as a matter of law in construing the clauses in the contract as creating a condition subsequent, and in admitting evidence as to whether it was intended to create a mere covenant or condition subsequent.

Before entering upon the discussion of these points we will briefly dispose of respondent's contention that there is no proper record on appeal before the court. It appears that in accordance with the provisions of section 953a of the Code of Civil Procedure, appellant filed, within the required time, a notice of intention and request for a transcript. The court, however, never ordered the reporter to prepare said transcript, as required by paragraph 2 of section 953a. Nevertheless the reporter and clerk did prepare a transcript which was presented to and properly certified by the judge. Respondent claims that this court cannot consider said record, since it was never directed to be prepared by the court. But it is apparent that the omission was cured by the due certification by the judge of the transcript which had been prepared.

On August 6, 1915, appellant made his motion for a new trial, which was denied on August 30, 1915, and on September 1, 1915, appellant filed his notice of appeal from said order. On August 8, 1915, an order denying a motion for a new trial ceased to be an appealable order. Respondent, therefore, claims that the court cannot consider the record on

such alleged appeal. But respondent overlooks section 956 (Code of Civil Procedure), which was amended at the same time and which declares that any order on motion for a new trial may be reviewed on an appeal from a judgment. If the amendment to section 963 operated to deprive appellant of a separate appeal from the order denying his motion for a new trial, the amendment to section 956 operated equally to make such order reviewable on an appeal from the judgment, and as appellant appeals from the judgment, respondent's contention has little of merit to recommend it.

The finding of the court that defendant never intended to carry out his contract, a finding virtually of fraud, must be disregarded, for no issue of fraud was tendered by the pleadings, the sole issue being the failure of consideration.

Appellant's contentions that the clause in the contract creates only a covenant and not a condition subsequent and that parol evidence was improperly admitted, present a matter of considerably more difficulty. There is probably no subject of a legal nature involving more serious controversy than that of similar conditions in contracts. Though we find many distinctions drawn between conditions subsequent and covenants, and the rules for their distinction clearly stated, just whether the one or the other exists is a matter of construction in each particular case. We may notice certain positive rules of construction which have been laid down and established, and it is sufficient for this purpose to quote from *Hawley* v. *Kafitz*, 148 Cal. 393, [113 Am. St. Rep. 282, 3 L. R. A. (N. S.) 741, 83 Pac. 248], as follows: ''Conditions subsequent are those which in terms operate upon an estate conveyed and render it liable to be defeated for breach of the conditions. Such conditions are not favored in law, because they tend to destroy estates, and no provision in a deed relied on to create a condition subsequent will be so interpreted if the language of the provision will bear any other reasonable construction. While no precise form of words is necessary to create a condition subsequent, still it must be created by express terms or by clear implication. Merely reciting in a deed that it is in consideration of a certain sum, and that the grantee shall do other things specified therein, does not create an estate upon condition. There must be language used which is so clear as to leave no doubt that the grantor intended that an estate upon condition subsequent should

be created—language which *ex proprio vigore* imports such a condition. (*Cullen* v. *Sprigg,* 83 Cal. 64, [23 Pac. 222]; *Behlow* v. *Southern Pacific R. R. Co.,* 130 Cal. 19, [62 Pac. 295].) '' In that case the deed sought to be forfeited contained the following provision: ''This deed is given by the parties of the first part, and accepted by the second party upon the *express agreement* of the second party to build, or cause to be built . . . within six (6) months . . . a dwelling-house . . . '' It was held, however, that said provision constituted a mere covenant and not a condition subsequent.

The same considerations are to be found reiterated in *Womble* v. *Womble,* 14 Cal. App. 739, [113 Pac. 353]; *Firth* v. *Los Angeles Pacific Land Co.,* 28 Cal. App. 399, [152 Pac. 935]; *Fitzgerald* v. *County of Modoc,* 164 Cal. 493, [44 L. R. A. (N. S.) 1229, 129 Pac. 794]; *Schott* v. *Schott,* 168 Cal. 342, [143 Pac. 595]; *Victoria Hospital Assn.* v. *All Persons, etc.,* 169 Cal. 455, [147 Pac. 124].

Turning now to the instrument in question, it is difficult to find anything to support the position that a condition subsequent was intended. The deed and contract were the voluntary act of the grantor. There is no charge of fraud or mistake or want of good faith at the time the deed was given. There is nothing in the language of either instrument to suggest a condition subsequent, with that degree of clarity required by the decisions. To the contrary, the language used indicates the opposite. There is nothing whatever in the deed proper to suggest the condition, and the language relied upon to constitute the condition is in the contract, as follows: ''Now, therefore, it is hereby mutually agreed that the party of the first part will undertake the opening up and development of said property as a mining claim at his own expense and free of cost and expense to the party of the second part. . . . '' It will be seen that the language here used is very much like that employed in the Kafitz case, *supra,* and we may well employ the language of that case in this connection: ''In the case at bar the provision which, it is claimed, created a condition subsequent contains no language which in terms declares such a condition, or which by necessary implication imports one. There is an entire absence of any of those apt or appropriate words or expressions which are usually employed for the purpose of creating a condition subsequent—technical terms which, if the condition subsequent is intended to be created, generally follow the granting clause

of the deed, and declare that the estate conveyed is upon 'express condition' that certain things shall be done, or 'provided, however,' or 'in the event that' certain terms imposed are or are not complied with, the deed shall be void, and the estate granted shall be terminated or forfeited. . . . Not only is there no language which would create a condition subsequent, but the language actually employed, 'This deed is . . . upon the express agreement,' implies a personal covenant, and not a condition."

But the other language of the instrument leaves no doubt in our minds as to the soundness of the position here taken. In the first paragraphs of the contract it is declared: "Whereas the said party of the second part has this day granted and conveyed unto the said party of the first part by deed *absolute and without condition* . . . and whereas it is understood . . . that during his (grantor's, party of the second part) lifetime said property shall be advantageously developed in a proper and systematic manner as a mining claim for the benefit of said party of the first part." Then follows the mutual agreement quoted above, followed by a clause giving the grantor a right to make a sale if he shall find it advantageous, and the instrument proceeds: "It being further understood and agreed that the party of the first part is to have and receive the whole of the proceeds from the sale of said property except such amount thereof as may be necessary to provide for the care and maintenance of said party of the second part, during his lifetime." The language here quoted leaves little to be said. It indicates positively an intention to transfer to the defendant free from condition the full interest and benefit of the property. But lest some doubt should arise as to its meaning, the following was added: "It is fully understood and agreed that the intention of the parties herein is to give to the party of the first part the full and entire benefit of all the property of the party of the second part this day conveyed with the right to proceed with the opening up and development thereof, and to obtain the full benefit to be derived therefrom save and except that the party of the second part is to be provided for during his lifetime." The intention was not to give defendant the property on the condition that he "proceed with the opening up and development thereof," but to transfer to him the full and beneficial right to do so. As in *Lawrence* v. *Gayetty,* 78 Cal.

35 Cal. App.—18

126, [12 Am. St. Rep. 29, 20 Pac. 382], a case very like this in its facts, "the plaintiff saw proper to accept the . . . promise of the defendant to do certain things without any agreement or understanding that the failure to do the acts so promised should be a condition, or in any way affect the validity of the deed, or entitle him to a reconveyance."

The case of *Downing* v. *Rademacher*, 133 Cal. 220, [85 Am. St. Rep. 160, 65 Pac. 385], much relied upon by respondent, is clearly distinguishable from the present case. The Downing case concerns a deed which contemplated the working of mines on shares, a recognized exception to the general rule controlling the construction of conditions subsequent. (8 R. C. L. 1105.) But even were it not so, the absence of such positive language declaratory of the intent of the parties as is to be found in the present case would deprive it of any weight as an authority here.

The court fell into error in admitting parol evidence to ascertain the meaning of the parties. "The clause in the deed was in no wise ambiguous or equivocal. Its language was plain and clear, and whether the clause created a condition subsequent, as contended by plaintiffs, or a mere personal covenant, as insisted by defendant, was a matter of pure legal interpretation for the court. That neither evidence of the understanding of the plaintiffs nor the interpretation they desired to place upon the unambiguous language of the clause in their deed was admissible is so elementary that it is disposed of merely by stating it." (*Hawley* v. *Kafitz*, 148 Cal. 393, [113 Am. St. Rep. 282, 3 L. R. A. (N. S.) 741, 83 Pac. 248].) The declaration of intention incorporated into the contract clearly constitutes a "term" of said contract, and having been thus incorporated, was not subject to be varied or contradicted by evidence extrinsic in nature.

Another consideration urged in the brief of respondent is that the evidence showed that the intention of the grantor was that the deed should not take effect until his death, and, therefore, it was void as an ineffectual attempt to make a testamentary disposition of his property. The rule is, no doubt, that if there is no intention to pass the title until after the death of the grantor, the mere manual tradition of the deed does not constitute such delivery as will vest the title in the grantee. The test is whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there was an effective de-

livery. If not, there was no delivery, and this matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence bearing upon the question. (*Williams* v. *Kidd*, 170 Cal. 631, [Ann. Cas. 1916E, 703, 151 Pac. 1].) This intention may be shown by an express declaration to that effect or it may rest in a rational inference from the facts and circumstances of the case. It is further held in the Williams case, *supra,* that "delivery" is a word of well-defined meaning in the law, and means the act, however evidenced, by which the instrument takes effect and title thereby passes, while "execution" includes effective delivery.

We are not prepared to say as to this phase of the controversy that it might not be held that there was no effective delivery of the deed within the contemplation of the foregoing statement of the law. And the court below was undoubtedly of the opinion that it was the intention of the grantor that such deed should not become operative until the death of the grantor, for we have this finding: "That the said Joseph Hendley never intended to convey the said mining property by said deed to his said nephew, but was under the impression up to the time of his death that he retained the ownership of said property, and that the title thereto was not to vest in Joseph W. Hendley until after his death." This is not an explicit finding that it was his intention that the title should not vest until his death, but it might answer the purpose if it were permitted under the pleadings. No such issue, however, was tendered by the complaint. Indeed, plaintiff alleged that on or about the twenty-sixth day of April, 1910, he "did execute to defendant a deed of conveyance of said described real property, a copy of which said deed marked 'exhibit A' is hereto annexed and made a part hereof." The term "execution," as we have seen, includes "effective delivery," so that said finding, in so far as it contemplates the intention to make the delivery operative only at the time of the death of the grantor, is directly opposed to the allegation of the complaint, which allegation, it may also be said, is not denied by the answer. It may be that by amendment to the complaint the difficulty could be obviated, but as the case is presented here, we think the decision cannot be upheld, and the judgment is therefore reversed.

Chipman, P. J., and Hart, J., concurred.