[S. F. No. 3298.   Department Two.—May 27, 1905.]

LOUISE W. TYLER, Appellant, v. CHRISTOPHER BOD-
WELL CURRIER, Respondent.

147   31
149  322

DEED OF GIFT FROM WIFE TO HUSBAND—DELIVERY—RECORD AFTER DEATH
—OPINION AS TO REVESTITURE OF TITLE—EVIDENCE.—Where a deed
of gift from a wife to her husband was acknowledged and actually
delivered unconditionally by her to him, the fact that he did not
record it until after his wife's death, without omitting it at her
request, but failing to do so merely from the erroneous opinion
that if he should die first she could destroy the deed, and thus
revest herself with title, has no pertinency to the issue as to the
delivery of the deed; and evidence was not admissible to show that
she took the deed with that understanding.

ID.—DELIVERY NOT AFFECTED BY SUBSEQUENT BILLS FOR TAXES.—After
the delivery of the deed the rendering of subsequent bills for taxes
for two years, by a real estate firm of which the husband was a
member, to the wife, without proof that she paid them, or that
the husband personally knew of such bills, is not a circumstance
of material importance on the question as to whether title had
passed, and the payment of them by her could in no event affect
the legal value of the previous delivery of the deed.

ID.—FIRE INSURANCE POLICY IN NAME OF WIFE.—The taking out of a
policy of insurance in the name of the wife after the delivery
of the unrecorded deed, on which the husband paid all the premiums,
could not affect the validity of the title passed by the delivered
deed, whatever effect it might have upon the validity of the policy.

ID.—DEED OF TRUST FOR LOAN—EXECUTION BY HUSBAND AND WIFE—
PROVISION FOR RECONVEYANCE TO WIFE—HUSBAND NOT ESTOPPED.—
Where the husband applied in his own name for a loan, and joined
with his wife in executing a deed of trust to secure the same, the
fact that the deed of trust provided, in case of full payment of the
loan, for a reconveyance to the wife, "her heirs and assigns, at her
request and costs," does not estop the husband from denying that
she was the owner of the property.

ID.—CESSATION OF TRUST—RIGHTS OF OWNER—ENFORCEMENT OF DEED—
VOID TRUST TO CONVEY TO WIFE.—Upon payment of the loan in
full the trust ceased and the property belonged to the husband
as owner, who could enforce a deed to clear his title.   The trust
to convey to the wife, who was not the owner of the property, was
void, and could not be enforced by her.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order deny-
ing a new trial.   F. J. Murasky, Judge.

The facts are stated in the opinion of the court.

Edward C. Harrison, for Appellant.

Delivery is a question of intention, to be decided from the circumstances of the case, which here show that the instrument was not intended to be effective until after the grantor's death. (*Denis* v. *Velati,* 96 Cal. 223, 227; *Kenney* v. *Parks,* 125 Cal. 146, 150; *Cazassa* v. *Cazassa,* 92 Tenn. 573;[1] Devlin on Deeds, 2d ed., sec. 282.) The respondent was estopped by the terms of the deed of trust executed by him. (11 Am. & Eng. Ency. of Law, 2d ed., p. 392; Bigelow on Estoppel, 5th ed., p. 332; Code Civ. Proc., sec. 1962, subd. 2; *Tillaux* v. *Tillaux,* 115 Cal. 663, 667.)

E. W. McGraw, and A. P. Van Duzer, for Respondent.

The evidence proves an absolute delivery of the deed. (*Dimmick* v. *Dimmick,* 95 Cal. 323-328.) The subsequent transactions could not impair the title vested in the grantee. (*Emmons* v. *Barton,* 109 Cal. 670; *Bury* v. *Young,* 98 Cal. 453; *Ord* v. *Ord,* 99 Cal. 525; *Tully* v. *Tully,* 137 Cal. 60; 69 Pac. 702; *Burden* v. *Burden,* 10 App. Div. 340; 41 N. Y. Supp. 978; *Saffold* v. *Horne,* 72 Minn. 470, 487; *Cummings* v. *Glass,* 162 Pa. St. 258; *McGee* v. *Allison,* 94 Iowa, 527; *Blair* v. *Howell,* 68 Iowa, 619; *Dyer* v. *Skadan,* 128 Mich. 348; 87 N. W. 277.[2]) No estoppel is pleaded or shown. (*Newhall* v. *Hatch,* 134 Cal. 273; *Pope* v. *Armsby,* 111 Cal. 164; *Murphy* v. *Clayton,* 113 Cal. 153.) The deed of trust was a mere security for debt, which ceased when payment was made, and conveyance could be compelled by the owner. (*Sacramento Bank* v. *Alcorn,* 121 Cal. 383; *Hodgkins* v. *Wright,* 127 Cal. 692; *Bostwick* v. *McEvoy,* 62 Cal. 496.) A trust to convey to a third person would be void. (*Estate of Fair,* 132 Cal. 523.[3])

McFARLAND, J.—The plaintiff is a daughter and an heir at law, and defendant is the surviving husband, of Emily F. Currier, deceased. The said decedent left a will in which she bequeathed and devised certain property to named persons,

---

[1] 36 Am. St. Rep. 112.      [3] 84 Am. St. Rep. 70.

[2] 92 Am. St. Rep. 461.

and gave the residue of her estate to the defendant herein for life, with remainder over to plaintiff and her sister, Letitia C. Hendry. During her lifetime the decedent executed a deed to defendant conveying to him in fee the certain lot of land described in the complaint herein; and this action was brought to have said deed set aside and annulled on the grounds,—1. That it was never "signed, executed, acknowledged, or delivered by said decedent in her lifetime"; and 2. That if it was signed, delivered, etc., its execution was procured by the undue influence of defendant. The prayer of the complaint is, that the deed be declared void, and that said land be decreed to be part of the estate of the decedent, and that defendant be forever debarred from asserting any interest therein except as a tenant for life, etc. The findings and judgment were for defendant, and plaintiff appeals from the judgment and from an order denying her motion for a new trial.

There was no evidence of the undue influence charged, and in his briefs and argument counsel for appellant makes no attempt to sustain the averment on that subject. It is also entirely clear that the decedent signed the deed in question, duly acknowledged it before a notary public, and on December 27, 1895, made actual delivery of it to respondent, who took it and kept it in his own exclusive possession from that time until after her death; and these facts are not controverted by appellant. But the contention, and the only contention, of appellant is, that notwithstanding the actual manual delivery of the deed to respondent and its continued possession by him as aforesaid, still the delivery, for certain averred reasons, should not be considered as, and was not, a delivery in law. We see no ground upon which this contention can be maintained.

The delivery of the deed was fully proven by the testimony of respondent and of the witness George M. Mitchell, who was present at the time of the delivery and made a memorandum thereof. There was at the time no limitation whatever as to the character or purpose of the actual delivery; it was, so far as the evidence shows, unconditional. It was intended by the wife as a deed of gift to her husband, and delivered to him as such. She had told a friend who was a business man that

CXLVII. Cal.—3

she wanted to give the house and lot in question—which was the family home—to her husband, and was advised by him how this could be done, and informed of the difference between a devise to him by will and a deed actually delivered to him in her lifetime. As to the possession of the deed after delivery respondent testified: "The deed remained in my possession from that time until after my wife's death. It would have been impossible for her to have obtained it again. It was in my safe-deposit box and she did n't have access to it." But appellant relies on certain circumstances hereinafter noticed as showing no delivery in law of the deed.

1. Respondent did not record the deed until after his wife's death; and appellant contends that something which he said about that matter in his testimony tends to show that the delivery of the deed was not with intent to pass title. Respondent said: "I did not refrain from recording it at her request. I refrained from recording it for fear that I might die first." Appellant's counsel then said to him, "Your idea was that if it was not recorded she could destroy it and revest herself with the title?" and he answered, "Yes, sir." There is no merit in this contention. The fact that respondent had the erroneous notion that if he should die before his wife, and that after his death she should get possession of the deed and destroy it the title would revest in her, has no pertinency to the issue of the delivery of the deed. (See *Dimmick v. Dimmick,* 95 Cal. 323.) And for the same reason the court did not err in sustaining an objection to the question whether respondent took the deed with the understanding on his part that in the event of his dying first the wife could get control of and destroy it and "thus revest herself with the title." Indeed, the use of the word "revest" assumes that the title had by the delivery of the deed vested in the grantee.

2. The respondent is a physician, and in addition to practicing his profession was a partner with one Mitchell in the real-estate business under the firm name of Currier & Mitchell; and the firm did some business with the decedent. Mitchell also attended to insurance business. After the delivery of the deed Currier & Mitchell rendered an account to the decedent, which included, among other things, taxes on the said lot of land for two years. It does not appear that

she objected to this charge; neither does it appear that her attention was called to it or that she paid it, or that respondent personally knew of it. Appellant argues that the charge for taxes is strong evidence to the point that the title had not passed; but this circumstance was really of no material importance. It is quite likely that charging her with the taxes for a year or two after the deed had passed was the mere inadvertent continuance of the accounts as they had formerly been kept, and was overlooked by her; but if she paid the tax account knowingly it was a matter of indifference to her, for she had the privilege of drawing on her husband's separate bank account, and in no event could this payment of taxes affect the legal value of the previous delivery of the deed.

3. After the delivery of the deed a fire-insurance policy on the premises was taken out in the name of the decedent. Appellant attaches importance to this circumstance, but it was of no consequence. The respondent paid all the premiums on the policy; it does not appear that the decedent had any knowledge that the policy was in her name; and Mitchell testified that it was through his oversight and error that the policy in existence at the time of the deed was not transferred to respondent. If a policy was taken in a wrong name, that fact might have affected its validity as against the insurance company, but it could have no effect upon the validity of the title which passed by the deed.

4. In 1899, which was after the delivery of the deed, the respondent made application in his own name to the Savings and Loan Society for a loan of two thousand dollars, to be secured by the property here involved. The application was accepted, and, instead of a mortgage, there was prepared a certain form of a deed of trust which has been held by this court to be a valid form of security for loan of the money. (See *Sacramento Bank* v. *Alcorn*, 121 Cal. 383, and cases there cited; and *Hodgkins* v. *Wright*, 127 Cal. 691.) The deed of trust was executed by the respondent, and also by his wife, the said decedent. It purports to convey the land here in controversy to two trustees; recites that it is intended to secure a loan of two thousand dollars; provides that if the money loaned should not be paid as agreed on the trustees may sell the property and apply the proceeds to the payment

of the debt and convey the land to the purchaser, etc., but that if the money be paid the trustees shall reconvey the property to the decedent, "her heirs and assigns, at her request and costs." The loan secured by this deed of trust was paid; and it does not appear whether or not the trustees ever reconveyed the property to any one. It is contended by appellant that by executing this deed jointly with the decedent respondent is estopped from denying that she was the owner of the property, and also that the deed of trust was in effect a reconveyance to the decedent, because it provided that in the event that the loan should be paid the trustees were to convey to her. Neither of these contentions is maintainable. As the title appeared on the record to be in the decedent, respondent had either to procure her to sign the deed of trust or record his own deed, which he did not desire to do; and we see nothing in this that has any of the elements of an estoppel. And while the deed of trust in one sense passed the title, yet it did so only for the purpose of security, and was, except as to the form and the procedure by which the loan could be enforced, substantially a mortgage. When the money secured by it was paid the trust ceased, and the estate of the trustees ceased; and while in such case the trustees could no doubt be compelled to reconvey in order to make the record title clear, still when the trust estate terminated the title was left in the grantor in whom it was vested at the time of the execution of the trust-deed. While this form of trust-deed has been held valid so far as it operates as a security for the payment of loaned money and gives the trustees power to sell for the purpose of enforcing such payment, and to convey to the purchaser who buys at the sale made for that purpose, still it could not be upheld as a trust to convey to any person other than the owner for any purpose other than the enforcing of the payment of the debt, for it would then be an attempt to create an unwarranted and void trust to convey within the rule declared in the Fair case.

In conclusion, it may be said that the contentions of appellant as above noticed would, under the most favorable view for her side, only constitute some conflicting evidence as to the issue whether the deceased delivered the deed in question to respondent, and do not afford any ground for disturbing the

findings of the court that she did deliver it and that the title thus passed.

The judgment and order appealed from are affirmed.

Lorigan, J., and Henshaw, J., concurred.

A petition for a hearing in Bank having been filed, the following opinion was rendered thereon on the 26th of June, 1905:—

THE COURT.—Rehearing denied.

The stipulation in the trust-deed as to the payment of the surplus, if any, to Mrs. Currier, should not be held to necessarily estop the husband from claiming the property. What was said in the opinion in *Hoeck* v. *Greif et al.*, 142 Cal. 119, as to a similar question was not necessary to a decision therein, and, in our view, is not a correct statement of the law.