[L. A. No. 5884. Department One.—November 29, 1920.]

EDNAH W. MARPLE, Respondent, v. C. E. JACKSON, Sheriff, etc., Defendant; FREDERICKA L. BLACKBURN et al., Appellants.

[1] HUSBAND AND WIFE—DELIVERY OF DEED—EVIDENCE—TESTIMONY OF HUSBAND.—In an action by a wife to enjoin a sale of real estate under an execution against her husband on the ground that the property was her separate property, the husband cannot, without her consent, in view of subdivision 1 of section 1881 of the Code of Civil Procedure, be examined by the defendants regarding the delivery of the deed from the husband to the wife under which she claimed the separate ownership of the property.

[2] ID.—ACTION TO ENJOIN EXECUTION SALE—DELIVERY OF DEED—IMPLIED FINDING.—Where in an action by a wife to enjoin a sale of real estate under an execution against her husband the complaint alleged that she was the owner of the property by virtue of a certain deed made by her husband to her, a finding that all of the allegations of the complaint were true implied a finding that the deed was duly delivered.

[3] DEED—DATE OF DELIVERY—PRESUMPTION.—Under section 1055 of the Civil Code, a deed duly executed and acknowledged must be presumed *prima facie* to have been duly delivered on the date it bears.

[4] ID.—DELIVERY—PRESUMPTION NOT OVERCOME.—The disputable presumption that a deed duly executed and acknowledged was delivered on the date it bears was not overcome by the evidence in this action.

[5] HUSBAND AND WIFE — VALIDITY OF DEED AS AGAINST HUSBAND'S CREDITORS—NONESTOPPEL OF WIFE.—A wife is not estopped as against judgment creditors of her husband from claiming that certain real estate deeded by him to her is her separate property, and not fraudulent as to creditors, although the deed was not recorded for several years after its execution, where the judgment was not obtained through any transaction in which the creditors relied upon the husband's ownership of the property, but in an action for damages for personal injuries.

APPEAL from a judgment of the Superior Court of Orange County. W. H. Thomas, Judge. Affirmed.

The facts are stated in the opinion of the court.

Elmer I. Moody and Porter C. Blackburn for Appellants.

Tanner, Odell & Taft for Respondent.

LAWLOR, J.—This is an appeal by the defendants, Fredericka L. Blackburn and Oliver V. Blackburn, her husband, from a judgment in favor of the plaintiff, Ednah W. Marple, in an action to enjoin the sale under execution of certain real estate situated in Orange County, alleged to be the separate property of the plaintiff. The record on appeal is presented in typewriting.

On April 20, 1916, Mrs. Blackburn secured a judgment in the superior court of Los Angeles County against plaintiff's husband, R. S. Marple, in the sum of $1,028.95. On July 6, 1917, execution was issued on the judgment, directing C. E. Jackson, sheriff of Orange County, to levy execution upon these premises. It is the sale of the property under this execution which respondent here seeks to enjoin. She bases her claim of title on a deed from R. S. Marple to her, which recites that it is made in consideration of love and affection. This deed bears the date, May 12, 1906, and was acknowledged on that day, but was not recorded until February 14, 1916. Appellants denied that the premises were the separate property of respondent, and alleged that they were the separate property of R. S. Marple, basing their claim on the grounds (1) that the deed from Marple to respondent was void for want of delivery, and (2) that, as a voluntary transfer made without valuable consideration, it was made by Marple in contemplation of insolvency and with the inten-

tion of defrauding his creditors. The cause was tried by the court which found *inter alia* that all the allegations of the complaint were true, and, as heretofore noted, rendered judgment in respondent's favor, adjudging that the premises were her separate property and restraining appellants from proceeding with the levy of the execution upon said premises.

1. At the trial respondent introduced in evidence the gift deed and rested. Appellants thereupon called respondent and later her husband as witnesses. After the latter had answered some preliminary questions respondent objected to his examination regarding either the delivery of the deed or the surroundng circumstances on the ground that, under subdivision 1 of section 1881 of the Code of Civil Procedure, "a husband cannot testify against his wife." The objection was sustained, and appellants' first contention is that this ruling was erroneous.

Subdivision 1 of said section reads in part: "A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband, without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage."

In *People* v. *Langtree,* 64 Cal. 256, [30 Pac. 813], the defendant was charged with burglary. In discussing the question whether the court erred in excluding the testimony of a Mrs. Brandon, which testimony tended to establish the innocence of the defendant and the guilt of the witness' husband, it was said, after quoting the above code section: "This is the provision of the code upon the subject, and it must prevail. . . . 'A wife cannot be examined, for or against her husband, without his consent.' . . . If examined in an action or proceeding to which he was a party, she would undoubtedly be examined for or against him. Any witness examined in an action or proceeding is examined for one party and against the other therein. . . . If the husband of this witness had been a party to the action on trial, she could not have been examined at all without his consent."

We quote from *Fitzgerald* v. *Livermore,* 2 Cal. Unrep. 744, [13 Pac. 167]: "The wife of the plaintiff was called as a witness for the defendant and gave testimony against the plaintiff without his consent. Her testimony was material. . . . We think the evidence . . . was incompetent."

[1] In our opinion there was no error in the ruling complained of. While it is true that, as was said in *People* v. *Langtree, supra,* quoting from Schouler on Husband and Wife, 85, "the prevailing tendency . . . is to regard the domestic confidence or the ties of a spouse as of little consequence compared with the public convenience of extending the means of ascertaining the truth," yet, under the unequivocal language of the first sentence of the code section, it is clear that, without respondent's consent, Marple was not a competent witness.

For this reason it will be unnecessary to consider whether the evidence of the circumstances surrounding the delivery of the deed falls within the privilege as to communications. The testimony was inadmissible, not because the communication was privileged, but because Marple was incompetent to testify against his wife—a party to the action.

*Poulson* v. *Stanley,* 122 Cal. 655, [68 Am. St. Rep. 73, 55 Pac. 605]; *People* v. *Loper,* 159 Cal. 6, 13, [Ann. Cas. 1912B, 1193, 112 Pac. 720], and *Savings Union Bank etc. Co.* v. *Crowley,* 176 Cal. 543, [169 Pac. 67], are cited by appellants in support of their contention. But in each of those cases the question was as to the nature of the particular communications with regard to which testimony was sought to be elicited, and in none of them was the spouse, for or against whom the testimony was offered, a party.

*Mitchell* v. *Superior Court,* 163 Cal. 423, 426, [125 Pac. 1061], is also cited by appellants on this point. That case, however, was a contempt proceeding which, as the court said, was in its nature "ancillary to the divorce action [previously instituted by the wife] and subject to the rules with reference to the competency of witnesses in that cause." It was held, therefore, that, inasmuch as the wife was a competent witness against the husband in the divorce action, it was proper to allow her, upon her own affidavit, to institute contempt proceedings against him on account of his failure to comply with the court's direction to pay her alimony. The case is plainly distinguishable from the one at bar.

[2] 2. We shall next consider appellants' contention that "the facts clearly show that there was never any delivery of the deed." It is alleged in the complaint that respondent was the owner of the premises by virtue of the deed of May 12, 1906. From the finding that all of the allegations of the

complaint are true, it must be implied that the court found
the deed was duly delivered. The appellants question the
sufficiency of the evidence to support the finding.

[3] At the outset it is to be observed that the deed was
duly executed and acknowledged, and hence, under section
1055 of the Civil Code, it must be presumed *prima facie* to
have been duly delivered on the date it bears (*Branson* v.
*Caruthers*, 49 Cal. 374, 380). The question then becomes,
Was this presumption overcome by appellants?

The respondent testified that she could not remember the
precise date of the delivery of the deed, but that it was
"twelve or fourteen years ago"; that there were present at
the time of the delivery, besides herself and her husband, a
Mr. and Mrs. Sanborn, a Miss Hyatt, and Charles D. Ballard,
a notary public; that prior to that occasion she had loaned
her husband considerable sums in return for which he had
promised "to deed me property . . . as soon as he got hold
of some"; that she knew nothing about the preparation of
the instrument itself; that she "couldn't just remember,"
but thought she had received the deed from Ballard and had
then laid it "up on the bookcase"; that the next morning
she and her husband took the deed and deposited it in a safe
deposit box; that the key to this box was sometimes in her
husband's and sometimes in her own custody; that they both
frequently opened the box and examined its contents, but
that she was always accompanied by her husband on such
occasions; that, just before the trial of the action in which
appellants secured the judgment which, according to the com-
plaint, they threaten to enforce against these premises, she
and her husband took the deed from the box and she per-
sonally filed it for record on February 14, 1916; that the
reason why the deed was not recorded prior to that time was
that when it was executed her husband had expressed the
desire not to have it recorded, saying: "I don't like to have
it appear I haven't anything in my own name"; that it was
after consulting an attorney that she did record the deed;
and that at all times her husband had the management and
control of the property.

Ballard, testifying for respondent, stated that he had pre-
pared the deed at Mr. Marple's request, and, as to the cir-
cumstances surrounding the alleged delivery, that the only
thing he could recall was "that my signature over here at

the left of the signature of the grantor is a signal to me that this deed was delivered to the grantee in my presence or by me, because I never put my signature under the insignia 'Signed, sealed and delivered,' unless it was either delivered by me . . . or by the grantor in my presence.''

There were introduced in evidence an assessment ''list'' containing Marple's sworn statement that he was the owner of these premises, and two mortgages on the property, each executed by respondent and her husband.

It is declared in Devlin on Deeds, section 284, that ''where a grantor executed a deed . . . to his wife, the fact that she placed the deed after delivery where her husband equally with herself could have access to it does not change its legal effect as a conveyance.''

And it was held in *Lewis* v. *Burns,* 122 Cal. 358, [55 Pac. 132] : ''The presumption is that a deed duly executed was delivered at its date; and the fact that it was not recorded until after the death of the grantor does not render the deed insufficient evidence of its delivery at its date.''

*Stone* v. *Daily,* 181 Cal. 571, [185 Pac. 662, 665], was a case where the question before the court was as to the delivery or nondelivery of two deeds. We quote: ''The retaking of possession and subsequent retention of the instrument by Mrs. Daily is not conclusive, even though it appear that it was not an afterthought but contemplated by her from the beginning. It is a very strong circumstance indicating that she did not intend such delivery as would put the deed beyond her control and power of recall, and would ordinarily be controlling. But the final question always is, What was the intent with which the formality of a delivery was gone through with? And if it appear indubitably that it was gone through with for the purpose of conveying the property then and there, and that the grantor desired thereafter to retain, and did retain the instrument, not that she might control or suspend its taking effect, but for the purposes of custody and safekeeping merely, as for instance to insure its not being recorded because she did not wish her husband to know of it, any contrary inference as to her intent arising from her continued possession of the instrument is of necessity overcome, and the fact of such continued possession becomes immaterial. . . .

"The case, then, is one where the formality of a delivery
is gone through with with the intent of making an immediate
effective conveyance, but after delivery the grantor retains
possession of the deed for purposes of safekeeping. That
such a delivery is valid and is not affected by the fact that
the instrument subsequently remains in the possession of the
grantor is well established. . . . "

[4] In the light of these authorities we think it clear that
the finding must be upheld. As has been shown, the pro-
duction of the deed raised a disputable presumption that it
had been duly delivered. It is true the grantor continued to
manage and control the property and that at his request the
deed was not recorded. But we have respondent's statement
that she had received the deed. It may well be the court
concluded, from Marple's request not to record the deed,
that both parties intended that title should pass and that
they desired not to make known the transaction because it
might injure Marple's credit. The court may also have in-
ferred that the placing of the instrument in the deposit box
was for safekeeping. And, under the ruling in *Bias* v. *Reed*,
169 Cal. 33, 42, [145 Pac. 516], "the force of an executed
conveyance is not to be impaired by subsequent acts or
declarations of the grantor." In any event, we are not pre-
pared to hold the court was not justified in finding that ap-
pellants had not overcome the presumption in favor of
delivery. Appellants' contention is without merit.

[5] 3. Nor, in our opinion, can appellants' contention
that the transaction involving the execution and delivery of
the deed was fraudulent as to creditors be sustained. On
this point the court found it was not true that, as alleged
in the answer, the transaction was tainted with fraud. As
already stated, respondent testified that it was in return for
loans which she had made to her husband that the latter ex-
ecuted and delivered this deed. It cannot be held that ap-
pellants have advanced any sums in reliance upon the facts
that the record title stood in the name of Marple, or that he
continued to manage and control the property. Nor is there
any showing that the grantor was insolvent or even finan-
cially embarrassed at the time the deed was executed and
delivered. Appellants did not secure their judgment against
Marple until after the deed had been recorded. It should be
noted, moreover, that the action in which appellants' judg-

ment was recovered was an action, not upon any contractual obligation, but for personal injuries sustained through having been struck by Marple's automobile, and was prosecuted against both Marple and respondent, so that the obligation which is the basis of appellants' claim was not incurred upon the faith that Marple was the owner of these premises, and respondent cannot be estopped, as against appellants at least, to claim that this is her separate property. In each of the cases cited by appellants on this point the transfer was held fraudulent because the complaining creditors had advanced funds to the grantor in reliance on the fact that the record title stood in his name. As we have seen, such is not the case here. It must be held that the evidence is sufficient to support the finding that there was no fraud either in the execution and delivery or in the recordation of the conveyance in question.

The judgment is affirmed.

Shaw, J., and Olney, J., concurred.