[L. A. No. 6222. In Bank.—October 7, 1921.]

EARL J. McCULLY, Executor, etc., Appellant, v. CLIF-FORD W. McARTHUR, etc., Respondent.

[1] APPEAL—CONFLICTING EVIDENCE—FINDINGS.—Where the evidence is sufficient as a matter of law, and presents a substantial conflict, the findings will not be disturbed on appeal.

[2] DEEDS—DELIVERY—EVIDENCE OF.—The question of delivery of a deed is essentially one of fact and depends upon the intention of the parties to unconditionally transfer the title to the property. No set form of delivery is necessary, and whether a delivery has been effected in a particular case must be determined by the facts and the circumstances, including the conduct of the parties.

[3] EVIDENCE—CREDIBILITY OF WITNESS.—It is the exclusive function of the trial court to weigh the evidence and determine the credibility of the witnesses.

---

2. Delivery of deed as question of law or fact, notes, 16 **Am. Dec.** 35; 58 **Am. Rep.** 289; 53 **Am. St. Rep.** 537; Ann. Cas. 1914D, 108.

[4] DEEDS—ACTION TO CANCEL AND QUIET TITLE—FINDINGS.—In an action for the cancellation of deeds to real property given by plaintiff's testator to the defendant and to quiet title, where the trial court found that on a certain date there was a delivery of the deeds, another finding to the effect that neither the testator nor her estate was the owner of the property at all times is correct, for upon the theory that there was a delivery on the date found, neither the testator nor her estate could have been the owner after that date.

[5] ID.—TRANSFER IN CONTEMPLATION OF DEATH—MOTIVE—EVIDENCE. Although the complaint alleged in such action that the transfer was made in contemplation of death, where the court found that the deeds were delivered during the lifetime of the grantor and that title was in the grantee, the motive of the former—whether she delivered the deeds in contemplation of death—is immaterial, and the finding could not have been prejudicial.

[6] ID.—EVIDENCE—PHYSICAL CONDITION OF GRANTOR.—In such a case evidence of the statement of the doctor to the grantor concerning her physical condition was properly excluded as hearsay, the doctor not being called as a witness.

[7] ID.—FEAR OF GRANTEE.—In such a case the testimony of a witness as to whether or not the grantor was in fear of the grantee was properly excluded, where there was no claim that the deeds were delivered by reason of the grantee's coercion.

[8] ID.—EQUITY—RELIEF.—In such a case, where the complaint asked for a cancellation of the deeds, and the court found that respondent was the owner of the property, the relief granted was clearly embraced within the issues.

[9] ID.—MOTION TO DISMISS CROSS-COMPLAINT AND SEPARATE DEFENSE —FAILURE TO OBJECT—WAIVER.—In such case, where no objection was made by plaintiff to the granting of motions by defendant at the close of the trial to dismiss the cross-complaint and separate defense without prejudice, the question cannot be raised for the first time on appeal.

[10] ID.—WITHDRAWAL OF PLEADING.—The withdrawal by defendant of his pleading admitting title to one-half of the property in appellant, carried with it the corresponding prayer for relief and left only the general prayer of the answer.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Earl J. McCully and Robt. T. Linney for Appellant.

John B. Haas and Gilbert F. Wyvell for Respondent.

LAWLOR, J.—This is an appeal by the plaintiff from a judgment in favor of the defendant, in an action for the cancellation of four deeds to real property located in several counties of the state, in which Lulu M. McArthur, the original plaintiff herein, was the grantor, and the defendant the grantee, and to quiet the title to the property. Lulu M. McArthur died prior to the trial of the action and Earl J. McCully, executor of her estate, was substituted as plaintiff.

The facts about which there is no dispute are these: Mrs. McArthur and respondent had resided together in the relation of mother and son for twenty years preceding the execution of the deeds in question. No kinship existed between them and Mrs. McArthur had not adopted respondent. She was sixty years of age and very ill at the time of the transaction. At that time she was living on a ranch at Rivera. Her deposition was taken prior to the trial. She testified therein that she was told by the nurse, Rose Morrison, that she might die before morning. The matter of transferring the property had been under consideration for some time previous to the day on which the deeds were executed, November 3, 1917. On that date respondent brought a notary, Estelle Le Sage, and his attorney, Mrs. Mabel Willebrandt, from Los Angeles to the ranch. Mrs. Willebrandt presented the deeds to Mrs. McArthur, who signed them while propped up in bed. The execution was witnessed by the notary and two other women, Mrs. McArthur declaring she did not desire to have the deeds recorded. It was discovered that Miss Le Sage had not brought her notarial seal along. The deeds were taken to Los Angeles the same day by respondent, Mrs. Willebrandt, and Miss Le Sage, where the seal was affixed, and the deeds given to respondent, who retained them and caused them to be recorded in April of the following year. Between November 3, 1917, and April, 1918, Mrs. McArthur destroyed what she believed at the time were the original deeds, but which proved to be copies. This action was brought on May 2, 1918. The facts which are involved in dispute will sufficiently appear in the summary of the evidence.

The complaint alleged the material facts and prayed for a cancellation of the deeds and that they be declared null and void, be released of public record, and that appellant

be declared the owner of the property. Respondent in his answer denied the allegations of the complaint. As a special defense and by way of cross-complaint he alleged that he was the owner of an undivided one-half interest in the property described in the complaint and prayed that he be adjudged the owner of such interest. In a separate defense he alleged that he "since the third day of November, 1917, held and does now hold the said undivided one-half interest of the said Lulu M. McArthur in trust for said plaintiff." The allegation of the cross-complaint is that appellant was the owner of some interest adverse to respondent, and respondent prayed that appellant be required to set forth the nature of her several claims, and that the title to one-half of the premises be declared to be in respondent. At the conclusion of the trial the court granted respondent's motion to dismiss the cross-complaint and separate defense without prejudice, and gave judgment for the respondent quieting his title to all the property.

The court found "that on the third day of November, 1917, for a sufficient consideration, the said Lulu M. McArthur, . . . of her own free will made, executed, and delivered to the defendant, . . . four grant deeds, deeding in fee simple the above-described property to the said defendant, . . . and that the title and fee in and to said property now stands in the name of Clifford W. McArthur; that all denials and allegations in defendant's answer are true."

1. Appellant contends that "The evidence in this case is clear and uncontradicted, that there was no valid delivery of the deeds," that "the judgment given was in excess of that demanded in the answer, and this in itself requires a reversal," that the "court in our opinion, committed several errors in its rulings on the admission of testimony," and that other findings besides those on the subject of delivery of the deeds are not supported by the evidence.

[1] In answer to this contention respondent correctly states the rule and cites authorities to the effect that where the evidence is sufficient as a matter of law, and presents a substantial conflict, the findings will not be disturbed on appeal. He also claims that from the testimony of appellant's own witnesses it might properly be contended that there is a sufficient conflict to justify an affirmance of the judgment.

As appellant asserts, "The defendant makes no claim that there was a delivery of the deeds at any other or subsequent time" than November 3, 1917, the day of their execution, and at the trial respondent's attorney expressly stated that no claim was made of a subsequent delivery. It therefore must be shown that a delivery was made on November 3, 1917.

[2] The question of delivery is essentially one of fact and depends upon the intention of the parties to transfer the title to the property unconditionally. No set form of delivery is necessary, and whether a delivery has been effected in a particular case must be determined by the facts and the circumstances, including the conduct of the parties. In 2 Tiffany on Real Property, second edition, section 461, page 1738, it is said: "While, as before stated, the necessity of delivery in connection with the instruments last named [deeds and contracts under seal], and others of an analogous character, is still fully recognized, the crude conception of a manual transfer of the instrument as the only means of making it legally effective, which gave birth to the expression 'delivery' as used in this connection, has been superseded by the more enlightened view that whether an instrument has been delivered is a question of intention merely, there being a sufficient delivery if an intention appears that it shall be legally operative, however this intention may be indicated. . . . Such a transfer to a third person, if not made with the intention that the instrument shall be legally operative, does not constitute a delivery; nor does a transfer to the grantee himself, if the transfer is not with such intention, but is for another purpose as, for instance, to enable him to examine the instrument."

In *Follmer* v. *Rohrer*, 158 Cal. 755, [112 Pac. 544], it is declared: " 'A valid delivery is accomplished when the conduct and acts of a grantor manifest a present intent to dispose of the title conveyed by the deed. No particular form of delivery is necessary; but any act or thing which manifests such an intent is sufficient to establish it. It is always a question of fact, and must be determined by the circumstances surrounding each transaction.' (*Kenniff* v. *Caulfield*, 140 Cal. 34, 40, [73 Pac. 803], citing other cases.) Manual tradition of the instrument is not enough; the transfer of possession must be with the intent of presently passing

title, and must not be hampered by the reservation of any right of revocation or recall." "It is settled that delivery is not complete until the grantor has voluntarily surrendered all control over it." (*Drinkwater* v. *Hollar*, 6 Cal. App. 117, [91 Pac. 664].) "The delivery is sufficient and complete if from any or all of the circumstances the grantor has made known his intention irrevocably to part with his dominion and control over the instrument, to the end that it may presently vest title in another." (*Moore* v. *Trott*, 162 Cal. 268, [122 Pac. 462]. See, also, *Williams* v. *Kidd*, 170 Cal. 631, [Ann. Cas. 1916E, 703, 151 Pac. 1]; *Stone* v. *Daily*, 181 Cal. 571, [185 Pac. 665].)

Considerable evidence was admitted on the issue of delivery. Respondent on cross-examination testified that "When the matter of making these deeds came up, I discussed that with her several weeks before." Nellie Allen Bell, a witness for appellant, testified that she "heard defendant say to Mrs. McArthur before the papers were signed, 'Well, Mother, we are ready to sign those papers,' and Mrs. McArthur said, 'All right, I suppose it is the thing to do.'" Respondent testified: "The signing took place in Mrs. McArthur's room; she was in bed at the time; I think Miss Willebrandt handed those deeds to Mrs. McArthur; and in detail Miss Willebrandt explained these deeds to her, when she handed them to her; those deeds were prepared under the request of Mrs. Lulu M. McArthur; the request was made to me, and the deeds were prepared by me and under my immediate direction; these deeds were handed to her one at a time, when they were signed; when she took the deeds she asked a number of questions about the deeds, and Miss Willebrandt explained each deed to her in detail." He also testified that "She signed each deed separately, and handed it to me"; that Mrs. McArthur said, "'I would like to have her [Mrs. McArthur's sister] sign as a witness,' so that there was no chance thereafter to make any trouble over the deeds." Estelle Le Sage testified: "Mrs. McArthur spoke to Mrs. Willebrandt about the deeds, and I said that I had to take them up and put the seal on them; she seemed to be very disappointed and she said, 'Well, I wanted everything done up this afternoon'; she said, 'I wanted it all done right now'; . . . yes, she said she wanted —very anxious to see them, to see that everything was fin-

ished up on them; she was disappointed because I didn't bring my seal; . . . she said she wanted him to have all the property, but there was one that she wanted to hold for a while." Respondent further testified: "I put the deeds that night in my desk, in my room; Mrs. McArthur had access to my desk; they remained in the desk from November 3d until I brought them in and put them in the safety deposit box; I think it was several weeks afterward, I don't remember just exactly the date; I had the box in the Hellman Bank; why, Mrs. McArthur never demanded of me either the original deeds, during the time the deeds were on the ranch there; she never asked me for the deeds until a very considerable time, months afterward, and I don't remember of her ever making a demand for the deeds; I can't—I would not say positively that she didn't—but I can't recollect of her having asked me for the deeds until the friction started months and months afterward," and that she "tried to get me to record them at the time they were first made out"; that "when she handed the deeds to me, she said she wanted the property to stand in my title; she said she wanted it to go to me. She said that I had been instrumental in making all the property. It was understood between us that whichever one should pass out first, the other should get the property." We quote further: "The Court: What occurred at the bank the day you and Mrs. McArthur went there to get the deeds? A. The day Mrs. McArthur and I went? The Court: Yes. A. I never went to the bank with her to get the deeds. The Court: When and where did you deliver her the copies? A. I didn't deliver them; they were in the bank; I didn't know they were taken for— or a long time afterward, I don't remember just how long." Mrs. Willebrandt testified: "Miss Le Sage placed the seal on the deeds, and handed them to Mr. McArthur, saying, 'Well, they are finished, that is your mother's wish.' . . . I don't think I mentioned about mailing the deeds to her. I don't think I stated that night that I would return the deeds to her to-morrow, after the notarial seal was put on. I didn't understand that she wanted them returned to her. I understood that she wanted it finished; didn't want them in the hands of the notary."

It is appellant's contention that the evidence clearly shows there was no delivery of the deeds. The testimony of his

witnesses is set forth, and asserted inconsistencies in the testimony of respondent are pointed out. Appellant also contends that the testimony of respondent is not to be credited; that respondent was anxious to secure the property; that he had "had some words" with deceased at the time she asked him for the deeds; and that these facts make his testimony untrustworthy. He lays stress on the testimony of Mrs. McArthur—"I told her [Mrs. Willebrandt] I wanted the deeds returned to me by mail and to remember that if I did not die that night I did not wish them delivered," and that Mrs. Willebrandt told her that she would return the deeds; on that of Mrs. Nellie Allen Bell, Mrs. Lottie Foster, and Estelle Le Sage, who testified that Mrs. McArthur requested Mrs. Willebrandt to return the deeds; on Mrs. Foster's further testimony that "She [Mrs. McArthur] said there should not be a delivery of the deeds; I don't think she said anything further about that delivery; she said to the lady lawyer that they were not to be delivered," that Mrs. McArthur "wanted them back by mail and offered to pay the postage," and that "She said, 'The deeds are not to be delivered now.'" Appellant refers to the testimony of Estelle Le Sage that Mrs. McArthur said: "I don't want them recorded." He claims the testimony of respondent corroborates that of appellant's witnesses in many respects, that respondent testified Mrs. McArthur said she wanted the deeds back, and that she made the request of Mrs. Willebrandt that they be mailed to the ranch. Appellant points to the happenings subsequent to the signing of the deeds and says: "It appears from the testimony of other witnesses which need not be reviewed in detail, that after the defendant had confessed to Mrs. McArthur that he had the deeds, she obtained from him what he led her to believe were the deeds that she signed; that in the presence of her friend, Alta I. Hitchcock, and Miss Prince, in charge of the safety deposit vault, she destroyed the deeds; that these deeds were in fact merely copies; that McArthur had kept the original deeds and afterward recorded them. From the foregoing review it appears that the testimony that Mrs. McArthur *did not intend to deliver the deeds, or have them delivered to the grantee—the defendant, by any other person,* is absolutely uncontradicted."

Because of the state of the evidence on the question whether Mrs. McArthur intended to and did deliver the deeds, and the apparent force of appellant's contention that the evidence fails to establish a delivery, we have. deemed it proper to set it out at some length. It is strongly urged by appellant that inasmuch as the evidence shows that Mrs. McArthur did not want the deeds recorded, but did want them returned to her after the notarial seal was affixed, and that she attempted to obtain the deeds from respondent, but that he deceived her by retaining the originals and giving her copies—thereby evidencing his recognition of her right to the deeds—it is clear she did not intend to deliver them, and that therefore the findings cannot be sustained.

[3] It is the exclusive function of the trial court to weigh the evidence and determine the credibility of the witnesses. Keeping this rule in view, it must be held under the evidence that we are bound by the findings of delivery. There is evidence that Mrs. McArthur handed the deeds to respondent and said she wanted the property to stand "in his title"; that she asked her sister to witness the conveyance that there might be no trouble over them, that she said she wanted the transfer completed at that time, and that later she requested respondent to have the deeds recorded. The evidence of the relationship and friendly feeling existing between Mrs. McArthur and respondent at the time of the making out and signing of the deeds, and that it was understood between them that one or the other should eventually get the property, may have been regarded as significant by the court in finding for respondent. The evidence that Mrs. McArthur did not wish the deeds recorded at the time they were delivered is not, of itself, necessarily inconsistent with a delivery. The court may have concluded from the evidence that the reason Mrs. McArthur did not desire the deeds recorded was because she did not wish respondent to trade one of the pieces of property at that time. Nor is the evidence that she later attempted to recover the deeds necessarily conclusive of nondelivery, for the court may have decided that she changed her mind concerning the transfer when the "friction" developed between them. As the evidence relied upon by appellant is in greater or less degree involved in conflict, and the testimony of respondent alone, if accepted, is sufficient to sustain a finding of de-

livery, it cannot be held that the trial court could not have found from the evidence that Mrs. McArthur intended to and did deliver the deeds.

2. Appellant contends that certain findings other than those of delivery are not supported by the evidence. Finding II, which is to the effect that neither Mrs. McArthur nor her estate was the owner of the property at all times, is one of these. [4] Manifestly, this finding is correct, for upon the theory that there was a delivery on November 3, 1917, neither she nor her estate could have been the owner after that date.

The other findings complained of are to the effect that it is not true the deeds were without consideration, that it is not true they were made in contemplation of death, that it is not true that Mrs. McArthur instructed Mrs. Willebrandt to return the deeds if she did not die, that it is true respondent had the deeds on November 8th, that it is true they were returned to him by Mrs. Willebrandt, but not for the purpose of returning them to Mrs. McArthur, that it is not true respondent on November 8th said the deeds were in the safe deposit box in Los Angeles, and that it is not true that on November 8th, or at any other time, respondent went with Mrs. McArthur to the safe deposit box and there delivered the deeds to her, and that she then placed them in her private safe deposit box. These findings are on the issues presented by the pleadings. As we have shown, the finding on delivery is to the effect that for a sufficient consideration Mrs. McArthur of her own free will executed and delivered the deeds. *Lieman* v. *Golly,* 178 Cal. 544, [174 Pac. 33], was an action to set aside deeds for a lack of consideration. The court said: "In his brief the appellant claims that the finding of the consideration is insufficient. The ninth finding states that each of said deeds 'was executed for a good consideration passing from defendant to said Annie M. Golly.' No further finding was necessary. On the contrary, since the findings also show that the deeds were executed voluntarily and with knowledge of their contents and the intent to convey, no consideration was necessary to support the deeds as valid conveyances of the land. (Civ. Code, sec. 1040.)" [5] It is true the complaint alleged the transfer was made in contemplation of death, but in view of the finding that the deeds were delivered during

the lifetime of Mrs. McArthur and that title was found to be in respondent, her motive—whether she delivered the deeds in contemplation of death—is immaterial and the finding could not have been prejudicial. As to the remaining findings, Mrs. Willebrandt testified she gave the deeds to respondent, that she did not understand Mrs. McArthur wanted them returned to her, and respondent testified he told Mrs. McArthur, a short while after the deeds were signed, that he had them in his desk at the ranch. The finding that respondent did not return the deeds to Mrs. McArthur is supported by the evidence, for it is not disputed she secured only the copies. The finding that Mrs. McArthur, on or about November 27th, learned for the first time that the copies of the deeds which she destroyed were not the originals is immaterial, for it having been found there was a delivery on November 3d, whether she later learned that copies and not originals had been given to her, becomes unimportant.

[6] 3. There was no error in excluding the testimony concerning Mrs. McArthur's physical condition. Her testimony to the effect that she thought she was critically ill was admitted, and the statement of the doctor to her concerning her condition, since the doctor was not called as a witness, was hearsay. [7] The testimony of Mrs. Foster, as to whether or not Mrs. McArthur was in fear of respondent, was properly excluded, for there was no claim that the deeds were delivered by reason of respondent's coercion. The testimony of Mrs. McCandless concerning the destruction of the deeds was properly rejected because the questions had already been asked and answered.

4. Appellant's contention that the judgment must be reversed for the reason that it exceeds the relief prayed for, in that in the separate defense and in the cross-complaint the respondent had alleged himself to be the owner of a one-half interest in the property and asked to be adjudged such owner, cannot be sustained. In *Zellerbach* v. *Allenberg*, 99 Cal. 57, [33 Pac. 786] it was contended the judgment was not authorized because it granted the defendant affirmative relief when no such relief was prayed for. The court said: "There was no error in the action of the court complained of. The case was one in equity, and the court was authorized to grant any relief consistent with the case made

and embraced within the issues, although not specifically prayed for.'' [8] In this case the relief granted was clearly embraced within the issues, for the complaint asked a cancellation of the deeds, and the court found that respondent was the owner of the property. Appellant argues further that the question presented here ''is the effect in an answer of allegations the only effect of which, when the pleading is taken as a whole, is that of a disclaimer and admission against interest as to a part of the subject matter of the action.'' In *Billings* v. *Drew,* 52 Cal. 565, it was declared: ''They had the right to set up negative as well as affirmative defenses to the action, and the affirmative matter, separately pleaded, did not operate as a waiver or withdrawal of the denials contained in other portions of the answer.'' In *Nudd* v. *Thompson,* 34 Cal. 39, a case involving a motion for judgment on the pleadings, it was said: ''We had occasion to consider that question in *Siter* v. *Jewett,* 33 Cal. 92, and we held that 'where there are several answers, an admission made in one is not available in proof of issues raised by the others.' '' In *Meyers* v. *Merillon,* 118 Cal. 352, [50 Pac. 662], the court declared: ''As in separate defenses a denial in one is not waived by an admission of the same matter in another (*Billings* v. *Drew,* 52 Cal. 565; *Miles* v. *Woodward,* 115 Cal. 308, [46 Pac. 1076]), so here the denial of the answer is not waived or overcome by an averment in the cross-complaint of substantially the same facts as those which the answer denies.'' It follows that respondent is not bound by the averments in the special defense and cross-complaint, and that the relief need not be limited to that prayed for. In *Southern Pac. R. R. Co.* v. *Dufour,* 95 Cal. 615, [19 L. R. A. 92, 30 Pac. 783], it was stated: ''At the close of defendant's case he withdrew his special defense, and this action of counsel is assigned as error. Upon an examination of the record we find no objection or exception taken to the withdrawal of this special defense from the answer, and hence do not perceive how it can be a proper subject for review. If plaintiff, relying on the allegations of the defense to cure a defective complaint, was surprised and misled by such action of counsel, upon a proper showing he would have been entitled to a continuance in order that he might amend his complaint or procure additional evidence, but there is nothing to indicate that he applied for

such relief." The question presented here is similar to the one in that case, with the additional fact that respondent moved also to dismiss the cross-complaint. [9] No objection was made by counsel for appellant to the granting of these motions, so the question may not be raised for the first time on appeal.

[10] It follows that respondent's withdrawal of these pleadings, which admitted title to one-half of the property to be in appellant, carried with it the corresponding prayer for relief, and left only the general prayer of the answer, which was "for such other and further relief as to the court may seem meet and proper in the premises."

5. It having been decided that the findings of delivery, as well as those on other material issues presented by the pleadings, were supported by the evidence, and that appellant's objections to the admission of testimony and to respondent's withdrawal of certain of his pleadings were without merit, it becomes unnecessary to consider respondent's contention that the bill of exceptions, which contains the entire record on appeal, not having been filed and served within the statutory period, and that the application for relief from such failure under section 473 of the Code of Civil Procedure having been fatally defective, appellant is not entitled to a review of the evidence.

Judgment affirmed.

Wilbur, J., Shurtleff, J., Sloane, J., Lennon, J., and Angellotti, C. J., concurred.