[Civ. No. 5826.   Third Appellate District.—July 14, 1937.]

NETTIE C. SHAVER, Respondent, v. NITA CANFIELD, Administratrix, etc., Appellant.

Charles F. Reindollar and Martinelli & Gardiner for Appellant.

Henry E. Greer for Respondent.

PULLEN, P. J.—This action was to quiet the title of Nettie C. Shaver to certain real property, in which she claims under three deeds alleged to have been delivered to her by her father, Willis L. Canfield, now deceased.

Defendant, the appellant, was the second wife of deceased, and claimed the real property in controversy was a part of his estate, he having died intestate, and should be distributed according to the laws of succession.

There is no dispute that the three deeds covering the property here involved were prepared at the request of the deceased and by him acknowledged and named Nettie C. Shaver as grantee.

The court found:

"That on or about the 9th day of April, 1932, that said Willis L. Canfield did execute, acknowledge and deliver to Nettie C. Shaver, the plaintiff herein, a deed of gift to the above described property for the purpose and with the intention of conveying the same to said Nettie C. Shaver, that said deed convey the said property to Nettie C. Shaver, who ever since the 9th day of April, 1932, has been the owner in fee of said real property, . . . "

The court further found that each of the deeds were absolute in form and delivered by Willis L. Canfield to Nettie C. Shaver, personally. It is the contention of appellant that the evidence is insufficient to support the finding of delivery with intention to pass title, and that error was committed by the court in the rejection of certain testimony.

In considering the facts in this case we must keep in mind, as said in *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157], that " . . . in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding. In our further statement of facts, we shall not, therefore, undertake to recite the testimony, abundant as it may be, which would have supported a finding in favor of appellant's allegation of a conversion. All that is required is to point out testimony which, if given credence by the trial court, would logically lead to the conclusion that there had been no conversion by the defendant. That much of this testimony was contradicted is, in this inquiry, an entirely unimportant consideration."

The same rule is also set forth in the *Estate of Filippi*, 9 Cal. App. (2d) 407 [49 Pac. (2d) 892], where the question involved was whether the evidence was sufficient to support the finding that a deed to certain property was a gift which passed full and complete title.

In examining the evidence, therefore, in the light most favorable to respondent's position, we find from the testimony of Mrs. Shaver, which was corroborated by her husband and by her son, that on April 9, 1932, Canfield was the owner of the lots here involved, and on that date and for a long time prior thereto he had been making his home with his daughter, Mrs. Shaver. On that day Mr. Canfield handed to Mrs. Shaver the three deeds which he had signed and acknowledged a day or two before. She testified she took the deeds, and after reading them over, thanked him and asked where "we should keep them". Mr. Canfield said he thought his little box where he kept all his private papers would be a good place, whereupon she handed the deeds back to him. They were then placed in a small tin box which also contained some of her mother's jewels, some insurance policies made in her favor, and some of her own possessions, and was left in a bureau drawer in the home of Mrs. Shaver. Both Mr. Canfield and Mrs. Shaver had keys to the box, although it was never locked. The bureau drawer was also unlocked, and in it also was kept the table silver of the Shaver household.

While Mr. Canfield lived with Mrs. Shaver the deeds were kept in this tin box in the bureau drawer, but when he moved in February, 1935, from the Shaver home to that of the lady who in April of that year became the second Mrs. Canfield, he took the deeds with him.

There is evidence in the record that in July of that year Mrs. Shaver visited her father in Cazadero and he then took the deeds out of his grip and handed them to her, telling her to take them down and have them recorded. A few days later, and before they had been recorded, she received a letter from Canfield asking her to return them, telling her that he found he had to make a change in one of them; and that it was "against the law to have a deed registered that money had been loaned on".

She testified she consulted an attorney, who advised her the deeds were good and that she was entitled to the property,

but that if it would make her father any happier to have them in his custody, she could return them to her father, which she did. However, the trial court having made no finding in regard to this second transaction we will not consider it in determining the issues here presented.

The following are a few of the cases where substantially the same testimony as adduced in regard to the first transaction has been held to establish a valid delivery: *Blackledge* v. *McIntosh,* 85 Cal. App. 475 [259 Pac. 770] : *Hodoian* v. *Garabedian,* 79 Cal. App. 762 [251 Pac. 227]; *Merritt* v. *Rey,* 104 Cal. App. 700 [286 Pac. 510]; *Kenniff* v. *Caulfield,* 140 Cal. 34 [73 Pac. 803]; *Bias* v. *Reed,* 169 Cal. 33 [145 Pac. 516]; *Tyler* v. *Currier,* 147 Cal. 31 [81 Pac. 319]; *Dimmick* v. *Dimmick,* 95 Cal. 323 [30 Pac. 547].

In Devlin on Deeds, third edition, section 278a, it is said:

"Where a deed has been delivered the fact that the grantee allows it to remain in the custody of the grantor will not invalidate it. A deed may be returned after delivery to the grantor, so as to insure that it would not be placed on record without affecting the delivery."

The fact that Mr. Canfield collected the rents or a greater portion of them, and used them for himself and mortgaged the property without the knowledge of the grantee, did not affect the delivery. (*Blackledge* v. *McIntosh, supra*; *Marple* v. *Jackson,* 184 Cal. 411 [193 Pac. 940]; *Brandt* v. *Brandt,* 85 Cal. App. 720 [260 Pac. 342]; *Merritt* v. *Rey, supra.*)

In the Blackledge case, *supra,* the grantor, after execution and delivery of the deeds, paid the taxes, collected the rents, made repairs and improvements and made returns to the assessor as legal owner. He also appeared as legal owner in an action involving title to one of the pieces of property.

In the Marple case, *supra,* Marple made a statement to the assessor that he was the owner of the premises and executed a second mortgage on the property.

In the Brandt case, *supra,* the grantor executed five different mortgages on the property and attempted to deed it to another grantee.

In the Merritt case, *supra,* the grantor collected the rents of the property for seventeen years and also mortgaged it to the grantee.

The fact that after the delivery of the deeds they were placed in a tin box in the grantor's room would not affect

the legality of the delivery. (*Stone* v. *Daily*, 181 Cal. 571 [185 Pac. 665].) Nor would the destruction of the deeds revest title in the grantor. (Sec. 1058, Civ. Code; *McCully* v. *McArthur*, 187 Cal. 194 [201 Pac. 323] ; *Hall* v. *Ferguson*, 8 Cal. App. (2d) 444 [47 Pac. (2d) 1073].)

It would therefore appear to us that the foregoing testimony is ample to support the findings of the trial court.

The second point urged for reversal is that the trial court erred in excluding declarations of intent and purpose made by the grantor during the preparation of and at the time of signing the deeds and also subsequent to the manual tradition.

Defendant attempted to show that the grantor made certain statements to his attorney at the time the deeds were being prepared that he did not intend to deliver the deeds but was going to retain them, thereby avoiding the necessity of probate. Some three years after the deeds had been prepared Mr. Canfield discussed with the same attorney the matter of making a will, affecting the same property covered by the deeds.

A tenant in one of the houses described in one of the deeds would have testified, if permitted, that Mr. Canfield told him that he, Canfield, owned the property and that he had no intention of disposing of it, and that the Shavers had nothing to say about the property.

To these lines of examination the court sustained objections, and we think properly so.

Whatever Canfield may have said a day or two prior to handing the deeds to Mrs. Shaver could not be taken as indicative of his intentions when he made the actual delivery, when his language at the time of such manual tradition, his words and actions were plain and unambiguous.

Mrs. Shaver held an undivided one-half interest in the real property in question, it having been received by her from her mother prior to her death. By mutual agreement Mrs. Shaver conveyed her undivided interest to her father, and Canfield then caused deeds to be prepared conveying the property from him to his daughter, and as he handed the deeds to her, said, "Nettie, here are the deeds. I promised you I would give them to you when you signed the assignment of the property over to me, and you know it was your mother's wish and mine, too, that this property should be yours."

That this conversation took place was not successfully challenged, and with evidence of such clear intention to pass title a statement made some time prior thereto should not be received in an attempt to rebut delivery. Neither can it be held that the conversation with the attorney was a part of the *res gestae*.

■ Nor under the circumstances here do the authorities justify the admission of statements made by Canfield subsequent to delivery.

In *Blackledge* v. *McIntosh, supra,* the law is well settled that where a deed absolute in form is delivered by the grantor to the grantee, title vests in the grantee discharged of any condition on which the delivery was made, which is in effect the rule in section 1056 of the Civil Code.

In practically all the cases cited by appellant the attempted delivery was made to a third party. In *Williams* v. *Kidd,* 170 Cal. 631 [151 Pac. 1, 7, Ann. Cas. 1916E, 703], relied upon by appellant, the court said, it is "well settled that acts and declarations of a grantor made after he has parted with the title to property and in disparagement of it are inadmissible when made in the absence of the grantee, . . . "

What differentiated the Williams case from that rule and permitted the declarations and conduct of Williams to be shown during a period subsequent to the making of the deed, and while Kidd held it as a.depository, was because, as the court said, "we are satisfied that such acts, conduct and declarations of Williams with reference to the property during *that* period, were properly admissible as bearing on the issue as to whether there had been a delivery of the deed".

In *Stone* v. *Daily,* 181 Cal. 571 [185 Pac. 665], deeds were signed by husband and wife and placed in escrow with the bank, to be delivered to the survivor; the court considered the previous agreement of the parties and found that the delivery was not absolute and was conditional upon the grantee surviving the grantor. There is no doubt that the law will examine the surrounding circumstances, that is the *res gestae,* and if two conflicting inferences arise, one as to the delivery and the others as to non-delivery, declarations by a decedent both before and after delivery are admissible for the purpose of throwing light upon these conflicting inferences.

█ So, too, where a deed is made to avoid probate, that is, made with the intention that it shall operate as a conveyance in the event of death of the grantor, it takes effect immediately upon execution and title passes to the grantee. (*Mowry* v. *Heney,* 86 Cal. 471 [25 Pac. 17].)

In *Wilbur* v. *Grover,* 140 Mich. 187 [103 N. W. 583], a similar question was examined, and in view of the fact that the rule in Michigan in the matter of admissibility of declarations of a grantor for the purpose of showing that intent with which a deed was delivered is the same as in our state, the opinion rendered therein is of considerable assistance.

" . . . The question for our consideration, then, is this: Is it competent to prove that either of the parties entertained a secret and undisclosed intention that the delivery of the deed should be ineffectual to transfer title? The question for our determination is not, as in *Schuffert* v. *Grote,* 88 Mich. 650 [50 N. W. 657, 26 Am. St. Rep. 316], and in *Roup* v. *Roup,* 136 Mich. 385 [99 N. W. 389], whether acts and words accompanying a formal delivery are admissible to rebut the presumption that the grantor intended to transfer the legal title. This case is also to be distinguished from those cases where the deed has not been actually delivered to the grantee. See *Stevens* v. *Castel,* 63 Mich. 111 [29 N. W. 828], and *Burk* v. *Sproat,* 96 Mich. 404 [55 N. W. 985]. In such cases the delivery depends wholly upon the intention of the parties, and, to ascertain this intention, it is permissible and necessary to make an extended inquiry into the acts and declarations of the parties. The excluded evidence of this case was not admissible unless it was competent for the grantor to prove that either he or the grantee at the time of the delivery entertained a secret intention at variance with that which the law inferred from their actions and conduct. I think the elementary principles of the law of contracts forbid the admission of such evidence. See *Nichols* v. *Mercer,* 44 Ill. 250, 252. In a case somewhat like this it was said: 'Subsequent statements of party's motives or intentions will not be received to affect the rights of others or to explain a transaction. It is only the intention declared at the time of such transaction which, as a part of the *res gestae,* can bind the defendants. An exception to this rule exists only when the statements are made to a party to be affected by them under circumstances from which his acquiescence in their truth can be fairly inferred, if not expressed, and then they are en-

titled to little or much consideration according to the circumstances under which they are made.' See *Dawson* v. *Hall,* 2 Mich. 390, 394. *Stevens* v. *Stevens,* 150 Mass. 557 [23 N. E. 378]. . . . That it was not intended to hold that she might testify to an intent at variance with her acts is indicated in the opinion. It is said 'A concealed intention that a delivery made with such formalities or declarations or under such circumstances that the grantee believed and was justified in believing that the manual transfer was made with the purpose of passing the property to him, and accepting it as such, could not prevail against the intention expressed or fairly to be implied from the declarations or conduct of the grantor.' . . . ''

In *Hibberd* v. *Smith,* 67 Cal. 547 [4 Pac. 473, 8 Pac. 46, 56 Am. St. Rep. 726], it was said:

''There are some cases in which the intent is so plainly indicated by the *res gestae* that but one conclusion can be deduced. . . . Take another case of such a paper handed by the grantor to the grantee with the declaration 'this is my act and deed', a delivery would be so plainly intended that no other conclusion could be reached . . . But in other cases where the intent is to be inferred from circumstances in their very nature equivocal, the solution, as to the delivery or not becomes a question of fact, and if there is evidence tending to sustain a finding of the court *a quo* this court will not disturb it.''

The third point made by appellant is that certain testimony was offered to show that plaintiff made statements inconsistent with ownership when she directed her attorney to prepare a petition for the guardianship of her father in March, 1934, which was excluded. The petition, general in form, stated, ''that said estate consists of real and personal property, the exact amount of which is unknown to your petitioner''. Plaintiff testified that she knew of no real property other than that described in the deeds belonging to her father. We find no error in the ruling of the court upon this question. In the first place the petition followed the usual form in making such an allegation, and its preparation was left entirely to the attorney without any direction as to its contents by plaintiff. Furthermore, such statement would be merely a conclusion of plaintiff, and if, as a matter of fact the deeds were delivered with intent to pass title, it

would be immaterial whether she claimed to be the owner or disclaimed the same.

In *Follmer* v. *Rohrer,* 158 Cal. 755 [112 Pac. 544], a sworn statement of property owned by the grantee did not include the lot in question, but the deed was nevertheless upheld.

From the foregoing we believe that the findings are amply supported by the evidence and that no error was made in the ruling of the court on the admission or rejection of evidence offered in the trial.

The judgment should therefore be affirmed, and it is so ordered.

Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 7, 1937.