[Sac. No. 2981. In Bank.—May 4, 1921.]

RICHARD WHITE, as Executor, etc., Respondent, v. JOSEPH W. HENDLEY, Appellant.

[1] DEED — DELIVERY — INTENT TO TRANSFER TITLE — EVIDENCE.—To constitute a valid transfer of property by deed, the delivery of the instrument of conveyance must be attended by an intent to transfer title, and the question of the existence of such an intent is determined by a consideration of all the evidence in a given case bearing upon that issue.

[2] ACTION TO SET ASIDE DEED—INTENT TO TRANSFER TITLE—INSUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS.—In an action to set aside a deed to an interest in mining property on the theory that the grantor did not intend to divest himself of title, where the inferences attempted to be drawn from the evidence in support of the findings of the trial court in favor of the plaintiff upon which the judgment rests are unreasonable, illogical, and strained, they cannot avail to overcome the effect of the delivery of the deed, which the circumstances showed to have been made with full knowledge of the legal consequences thereof.

APPEAL from a judgment of the Superior Court of Butte County. Ernest Weyand, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

George F. Jones for Appellant.

W. H. Carlin for Respondent.

LENNON, J.—This action, instituted for the purpose of setting aside and canceling a deed to certain mining property in Butte County, California, arose from the following facts: The plaintiff's testate, Joseph Hendley, like other adventurous spirits, came to San Francisco as a sailor in the

---

1.  Delivery of deeds generally, notes, 16 Am. Dec. 35; 58 Am. Rep. 289; 53 Am. St. Rep. 537.

Delivery of deed as question of law or fact, note, Ann. Cas. 1914D, 108.

Effect of delivery of deed to grantee, subject to future extrinsic conditions, note, 16 L. R. A. (N. S.) 941.

year 1847. He remained in California and later began traveling the trails to the different mining camps in the interior, eventually locating in Morris Ravine, a few miles from Oroville, in the county of Butte. Here he spent the rest of his life, living in a cabin by himself, after the custom of so many of the early mining pioneers, and procuring title to the mining land referred to in the pleadings in this action.

In 1910 Joseph W. Hendley, a nephew of the pioneer Joseph Hendley, came to California from Illinois and visited his uncle. Desiring that his mine remain in the Hendley family and also wishing to see the mine developed in his own lifetime, the uncle went with his nephew, on April 26, 1910, to the office of an attorney in Oroville and executed the papers which are the source of the present controversy. These papers consisted of a deed and an agreement. The deed was executed by the uncle and purported to convey to the nephew the uncle's one-half interest in the mining land in question; it appears that in 1896 the uncle had transferred a one-half interest in the land to a Mrs. McIntyre. The agreement, wherein the nephew is referred to as the party of the first part and the uncle as the party of the second part, provides as follows:

"Whereas the said party of the second part has this day granted and conveyed unto the said party of the first part by Deed absolute and without condition all the real estate of said party of the second part situated in the County of Butte, State of California, consisting of all the right, title and interest of the party of the second part in and to that certain mining property situate in Morris Ravine, in said Butte County, and commonly known as the 'Joe Hendley Mine and Mining Property,' and

"Whereas, It is understood that the said party of the second part shall during his lifetime occupy said premises as a place of residence, and shall obtain therefrom such income as may be necessary to afford him a comfortable livelihood and living in accordance with his desire and condition in life, and that during his lifetime said property shall be advantageously developed in a proper and systematic manner as a mining claim for the benefit of said party of the first part, and also for the benefit of the party of the second part for the purpose hereinabove stated,

"Now therefore it is hereby mutually agreed that the party of the first part will undertake the opening up and developing of said property as a mining claim at his own expense and free of cost and expense to the party of the second part, and in case, either before or after the full development of said property as a mining claim, in the judgment of the party of the second part it shall be advantageous to sell and dispose of said property for a valuable consideration and at a sum in excess of the amount expended thereon by the party of the first part, then and in that event the party of the first part will consent to such sale and join in executing any conveyance necessary therefor, provided that in case of such sale said party of the first part shall be reimbursed from the proceeds thereof for all moneys expended by him or expenses which he may have incurred in connection with the development of said property and a reasonable rate of interest thereon, it being further understood and agreed that the party of the first part is to have and receive the whole of the proceeds from the sale of said property except such amount thereof as may be necessary to provide for the care and maintenance of said party of the second part during his lifetime.

"It is fully understood and agreed that the intention of the parties herein is to give to the party of the first part the full and entire benefit of all the property of the party of the second part this day conveyed, with the right to proceed with the opening up and development thereof, and to obtain the full benefit to be derived therefrom, save and except that the party of the second part is to be provided for during his lifetime.

"It is further understood and agreed that in case said party of the first part shall not survive the party of the second part, then and in that event the property described in said Deed is to be reconveyed to the party of the second part, subject, however, to the reimbursement of the party of the first part for the amounts expended by him in the development of said property as hereinbefore agreed.

"The terms of this agreement are to be binding upon the heirs, successors or assigns of both parties hereto."

The agreement was deposited in a bank in Oroville, with escrow instructions to the effect that, upon the death of

either the uncle or nephew, the agreement should be delivered to the survivor.

In 1914 the uncle commenced an action against the nephew to set aside the deed, claiming that the clauses in the agreement relating to the development of the mine by the nephew constituted conditions subsequent, the failure of the performance of which entitled plaintiff to a cancellation of the deed. Judgment was rendered in favor of the plaintiff, but was reversed by the district court of appeal, which held the clauses in question to be mere covenants. (*White v. Hendley*, 35 Cal. App. 267, [169 Pac. 710].) Plaintiff thereupon amended his complaint and proceeded upon the theory that there was no intention on the part of the uncle at the time of the signing and acknowledgment of the deed, or at any time, to divest himself of title to any of the lands described in the deed or to vest title thereto in the nephew. The plaintiff again prevailed in the trial court, and this is the second appeal by the defendant. Pending the litigation the uncle died and his executor was substituted as plaintiff.

Fraud is not charged in this case and no evidence of fraud was presented; no question is raised on this trial as to the effect of a failure to comply with the provisions of the agreement in regard to the development of the mine during the lifetime of the uncle, for that point was determined on the first appeal. *Intention* was the sole issue of fact on the second trial, and we are of the opinion that appellant is correct in his contention that there is no substantial evidence to sustain the finding of the trial court on that issue.

[1] To constitute a valid transfer of real property by deed, the delivery of the instrument of conveyance must be attended by an intent to transfer title, and the question of the existence of such an intent is determined by a consideration of all the evidence in a given case bearing upon that issue. (*Williams* v. *Kidd*, 170 Cal. 631, 638, [Ann. Cas. 1916E, 703, 151 Pac. 1].) Therefore, the question to be determined in the instant case is whether the parties intended to effect a transfer of title or whether it was contemplated that no such transfer should take place and that the uncle should continue to be the owner thereof until his death. The written instruments embodying the transaction

of the parties, namely, the deed and agreement, are the most potent evidence of intention. The uncle testified that he voluntarily executed the deed to the nephew. This deed, which was in form an absolute conveyance, was not retained in the possession or control of the grantor, but was recorded and then mailed to the grantee with the knowledge and consent of the grantor. The agreement accompanying the deed begins with a recital that all of the interest of the uncle in the property has been conveyed to the nephew by deed "absolute and without condition," and, after setting forth an understanding that the nephew will open and develop the mine at his own expense, provides that the uncle shall, during his lifetime, be entitled to a sufficient amount of the income from the property or proceeds thereof, in the event of a sale, to afford him a comfortable livelihood. It then states that the intention is to give the nephew the full and entire benefit of all the property "conveyed," except only that the uncle is to be provided for during his lifetime, and closes with the provision that, in case the nephew should die before the uncle, then the property should be "reconveyed" to the latter. The provision in the event that the uncle should survive the nephew is relied upon by respondent in support of the argument that it was the intention that title should pass to the nephew only upon the death of the uncle. However, this provision itself and the entire agreement clearly negative the existence of any intention to postpone the taking effect of the deed. The only permissible construction of the agreement is that the salient objects in the mind of the uncle were the immediate passing of title to the nephew subject only to the life interest of the uncle. The very language of the provision for the return of the property in the event that the nephew predeceased the uncle recognized title as having vested in the nephew, for the agreement was that the property should be "reconveyed," thus acknowledging that a legal transfer would be necessary to vest title in the uncle. The efficacy of such a provision is of no import in the present case, and we do not pass upon the validity of the provision, but consider it merely for the purpose of ascertaining intent. Despite respondent's disparagement of the agreement as "a gem in the way of camouflage," it furnishes incontestable

proof that the parties contemplated a passing of title at the time of the execution of the deed.

The circumstances, concurrent and subsequent to the execution of the deed, point conclusively to the fact that there was no intent to postpone the vesting of title. The deed was not withheld, but was delivered to the grantee and recorded. Moreover, on August 1, 1911, sixteen months after the signing of the deed which is the subject of this action, Joseph Hendley, the uncle, executed and delivered to his nephew a deed conveying to him .112 of an acre, referred to in the testimony as the outlet to the mine, which was adjacent to the property described in the previous deed and which was inadvertently omitted from that instrument. Seven days later he executed and delivered to his nephew a deed to the water rights, there being some doubt in the minds of the parties as to whether or not the original deed covered the water rights. The execution, delivery, and recording of these supplementary conveyances furnishes additional proof of the intention of the grantor to divest himself of title to all of the property in question.

Further glimpses of this intention are revealed by the correspondence which ensued between the parties after the execution of the deed and agreement. That the uncle understood the general legal effect of a deed is evidenced by the following statement, in reference to another matter, contained in a letter to his nephew: "A deed, my dear nephew, is absolute title." In a letter from the uncle to the nephew, dated December 16, 1913, is the statement: "You are the owner of the property." Numerous references and passages in the correspondence indicate that the parties regarded the title as having passed to the nephew on the execution of the deed.

The evidence relied upon by respondent in support of the judgment of the trial court consists mainly of so-called inferences from the evidence adduced. Thus, it is claimed that the placing of the agreement in escrow, with instructions to deliver it to the survivor, demonstrates that no title had passed but that, upon the mere return of the agreement, the whole transaction would be wiped out. Such cannot reasonably be deemed the purpose of the escrow. It will be noted that the agreement did not provide for the mere redelivery of the deed or agreement, but recognized the

necessity of a reconveyance of the property in the event that the nephew predeceased the uncle. Clearly, the only purpose of the escrow was to provide the uncle with evidence of the agreement of the nephew in the event of the prior death of the latter. Respondent also points out that the nephew in one or two letters reminds the uncle that he had spoken of making a "will" and that the evidence shows that the uncle possessed no real property other than that in controversy. From these facts, it is argued, the inference is permissible that it was understood by the parties that the uncle should transmit the property to the nephew by will. In view of the conduct of the parties these facts are, in and of themselves, insufficient to support the inference contended for. The vague references to the execution of a will cannot be permitted to overturn the previous unequivocal acts of the parties. It is entirely reasonable to assume that the uncle had in mind the disposition of his personal belongings by will.

Counsel for respondent also relies upon the following testimony of the nephew upon cross-examination: "Q. And he and you [uncle and nephew] talked it over and went to Mr. Jones' office for the purpose of having the papers drawn up so that in case you should die before he would, that he would still own the property? A. Yes, sir." It is claimed that, by admitting that it was the understanding that the uncle was "still" to be the owner of the property in the event that the nephew died first, the nephew practically admitted that the intent was that title was to pass to the nephew only upon the uncle's death. This particular excerpt from the testimony, taken alone, might support such an inference, but not so when viewed in the light of all of the facts of the case and the other testimony of this witness.

[2] The inferences attempted to be drawn from the evidence in support of the findings upon which the judgment rests are unreasonable, illogical, and strained, and cannot, therefore, avail to overcome the effect of the delivery of the deed, which the circumstances show to have been made with full knowledge of the legal consequences thereof. Therefore, the finding of the trial court on the question of intent, and the judgment based thereon, cannot stand, for "the evidence is so clearly preponderating against the finding as made that

it can be said that there is no substantial evidence to sustain it." (*Williams* v. *Kidd, supra.*)

The judgment is reversed.

Sloane, J., Wilbur, J., Shaw, J., Olney, J., Lawlor, J., and Angellotti, C. J., concurred.