[Civ. No. 3168.   Third Appellate District.—November 23, 1926.]

JOHN M. HODOIAN, a Minor, etc., Appellant, v. AVAK
     GARABEDIAN, Respondent.

[1] DEEDS—GIFTS INTER VIVOS—CONVEYANCE IN CONTEMPLATION OF
    DEATH—AGREEMENT TO RECONVEY.—Where a person, realizing that
    he is afflicted with a fatal disease from which he expects soon
    to die, and apparently intending to transfer all of his prop-
    erty to his brother, with whom he has lived on friendly terms
    for many years, summons his attorney and formally exe-
    cutes and delivers to his brother conveyances to all his property
    to take effect *inter vivos*, and the transfer is accompanied with
    the manual custody of the personal property, the validity of
    such transfer is not impaired by the fact that said grantor
    afterward requests and is given a written agreement to reconvey
    the property in the event of his recovery.

[2] ID. — INTENT TO RELINQUISH CONTROL OVER INSTRUMENTS — EVI-
    DENCE.—The fact that the grantor said to his brother, "I am
    going to deed to you . . . but, if I get well, you have to give
    back to me," did•not compel the conclusion that the grantor meant
    that he was insisting that if he got well, the deeds and assign-
    ment must be given back to him, where᛫ the evidence showed
    that the attorney carefully explained to the grantor that he had
    to make an᛫ absolute delivery of the instruments, and other evi-
    dence led to the conclusion that the grantor intended to relinquish
    all control over the use or disposition of the instruments, after
    he delivered them, but desired a return of the property in the
    event of his recovery.

[3] ID.—DELIVERY—MANUAL TRANSFER—INTENT TO RELINQUISH CON-
    TROL.—In order to effectually transfer title to land the delivery
    of a deed is absolutely essential, and the manual transfer of the
    deed must be accompanied with an intent on the part of the
    grantor to relinquish all control over the instrument and to
    presently divest himself of the title.

[4] ID.—INTENT—PAROL EVIDENCE.—The intent with which the in-
    strument is transferred is a question of fact to be determined
    from all the circumstances surrounding the particular transaction;
    and such intent may be shown by oral testimony.

[5] ID. — INTENT — QUESTION OF FACT—CONFLICTING EVIDENCE—FIND-
    ING.—The question of the existence of the intent on the part

---

1.  Relinquishment of title or control by donor, note, 3 A. L. R.
918, 938.

3.  See 9 R. C. L. 151.

4.  See 9 Cal. Jur. 153; 8 R. C. L. 378.

5.  See 9 R. C. L. 155.

of the grantor to divest himself of title and relinquish all control over the instrument when he delivered it is one of fact to be determined by the trial court or jury; and where there is a conflict of evidence as to the intent the finding of the trial court is controlling.

[6] ID.—DELIVERY AND ACCEPTANCE—PRIMA FACIE EVIDENCE—BURDEN OF REBUTTAL.—The possession of a deed by a grantee, or those holding under him, is *prima facie* evidence of both delivery and acceptance; and the burden is on him who denies a valid transfer to one who holds a deed of conveyance to real property to show by a preponderance of the evidence that there was no conveyance or acceptance.

[7] ID.—CONDITIONAL DELIVERY — INTENT — ABSOLUTE CONVEYANCE.— Where the grantor delivers a deed to his grantee, with the intent that it shall convey title only in the event that the grantor shall fail to survive a contemplated operation, the delivery is governed by the provisions of section 1056 of the Civil Code and becomes absolute and final.

(1) 28 C. J., p. 638, n. 22, p. 639, n. 38, 39, p. 642, n. 82 New. (2) 28 C. J., p. 628, n. 43, 44. (3) 18 C. J., p. 196, n. 17, p. 200, n. 40. (4) 18 C. J., p. 198, n. 22, 23, p. 432, n. 39. (5) 4 C. J., p. 883, n. 33; 18 C. J., p. 216, n. 9 New. (6) 18 C. J., p. 418, n. 38, 39, 41, p. 441, n. 87. (7) 18 C. J., p. 211, n. 47.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

Peckinpah & Carter and M. G. Gallaher for Appellant.

Power & McFadzean and J. Thomas Crowe for Respondent.

THOMPSON, J., *pro tem.*—This is an appeal from a judgment upholding the due execution and delivery of two deeds of conveyance to real property, and an assignment of certain notes and bank accounts. The only question involved is whether the instruments were delivered by the grantor to the grantee with the intent to thereby divest himself of title and to relinquish all dominion and control over the instruments.

6. See 9 R. C. L. 185; 8 R. C. L. 999.
7. See 9 Cal. Jur. 166.

The issues of unsound mind and undue influence which were presented by the pleadings were specifically waived by appellant at the trial.

The plaintiff is a nephew of Iseal Garabedian, an Armenian, named in the pleadings as E. Garabedian, who was the grantor mentioned in the instruments in question. For twenty-three years prior to his death he had lived with his brother, Avak, who was the grantee. He had no other relatives except plaintiff and the family of his brother Avak. The grantor owned twenty acres of land near Merced, two lots in the town of Fowler and several notes, together with money in bank, represented by certificates of deposit and cash on open account. The value of the personal property was about twelve thousand dollars. For some time the grantor had been in ill health, and about two months prior to his death he had an attack of influenza, which led his physician to order him to be taken to the hospital. This was done ten days before his death. He died of pneumonia May 8, 1923. Avak and his daughter Karat visited him daily while he remained at the hospital. On May 2d he told his brother Avak to get an attorney by the name of George F. Gill, with whom he had transacted business for three years past, and bring him to the hospital. Pursuant to this request the brother and Mr. Gill visited him during the forenoon of that day. The grantor told Gill that he wanted to dispose of his property, and was thereupon asked: "What do you want to do with your property?" Turning to his brother Avak, the grantor said: "Whatever I got, I going to give you." Then, after considerable talk about making a will, the attorney told him that if he made a will it would have to be probated. He then said that he wanted to save the expense of probating, and that he did not wish to make a will, but would deed the property directly to his brother.

Mr. Gill testified with respect to this part of the conversation: "I went down to the hospital, and I asked whether he wanted to make some disposition of his property. . . . I assumed he wanted to make a will. . . . He wanted to know what the expense would be. I told him it would have to be probated. . . . He didn't want that. . . . I then reported to him that he would have to put it in escrow, or make a conveyance and put it in the bank, and give it to him

absolutely. . . . They decided they didn't want to put them in the bank.''

The notes, certificates of deposit and old deeds containing a description of the land and property to be conveyed were kept in a safe deposit box at the bank. Mr. Gill explained that it would be necessary for him to obtain these documents, in order to draw up the instruments of conveyance, and for that purpose he visited the bank to inquire what procedure was necessary for him to gain access to the box. Upon securing the necessary information he returned and prepared a written authorization, the necessity of signing which Avak explained to him, and he said: ''You bring anything down, I sign them.'' This authorization, in the following language, was then signed by the grantor:

"Tulare, Calif., May 2nd, 1923.

''Tulare Branch of Southwest Trust & Savings Bank:

''Gentlemen: This is to authorize you to permit A. Garabedian to open my safe-deposit box No. 582, and to remove any and all the contents thereof.

''I do hereby assign and deliver to the said A. Garabedian all the contents of said safe-deposit box.

''You are released from any and all liability by reason of following these instructions.

''Very sincerely yours,

'' (Signed)    E. GARABEDIAN.''

When the grantor was first taken to the hospital he handed his keys, including the safe deposit box key, to his brother, saying: ''You keep that.'' Having procured the written authorization, the attorney and Avak went to the bank and took out all of the documents from the box. They then made an engagement to meet at the hospital in the afternoon, and the attorney went to his office and prepared the two deeds and the assignment in question. Pursuant to arrangement, they again met in the sick-room about half-past 1 o'clock. These instruments were first read and explained to the grantor by both Mr. Gill and Miss Karat. The grantor was able to speak the English language, but at times expressed himself with difficulty, and for this reason a part of the conversation regarding the disposition of the property was conducted through the niece, Karat, acting as an interpreter. After reading and ex-

plaining these instruments of conveyance to the grantor, he signed them in the presence of witnesses and handed them to the grantee, without reservation.

Regarding this portion of the transaction the attorney testified: "We went back to the hospital, and I explained to him in English, the substance of the deed, and the substance of the assignment, then I asked the young lady to read the assignment to him, and explain it as she went along. And she did this in Armenian. Then I asked him if that was the way he wanted it, and he said yes. Then he gave them, either to the girl or to his brother, I don't know which. Anyway, as far as my part of it was concerned, it was finished. Then I went to go. Then the young lady told me he wanted to know what would happen in case he got well. So I told him nothing would happen, because I would draw an instrument for his brother to sign, that he would return the property in case he got well. . . . That was after the delivery of the deed, . . . and just before I was leaving. The deeds were (then) acknowledged and turned over to Avak. I told them there had to be a delivery—I remember that."

All conversations regarding the transfer and the execution and delivery of the instruments took place at the hospital, in the presence of the grantor, his brother Avak, his niece Karat, the attorney and a nurse. The grantee, Avak, testified that when Mr. Gill asked his brother if he wanted to make a will, he said: "No, I'm going to deed to him; . . . whatever I got, I going to give to you (Avak)." That the attorney then said: "All right, if you want to I give it to your brother; I will make out a paper, and give it to him." The grantor further said to his brother: "I have got one house; one twenty acre ranch, I am going to deed to you; besides that, some money too. . . . But, he says, if I get well, you have to give back to me." And the grantee said, "All right, I am going to give you white and black," meaning that he would give him a written agreement to return the property, if he recovered from the disease from which he was suffering.

Respecting the delivery, the grantee testified, "As soon as he go down to the hospital, and he (the grantor) sign up, my brother hand to me." He then said that he put the documents in his pocket, and taking them down to the bank

he placed them in the safe deposit box belonging to the grantor, to remain there until the death of his brother. During all of which time the grantee retained the possession of the key and so reserved entire dominion and control over the instruments and property which had been given to him.

After the execution and delivery of the instruments, and pursuant to the request of the grantor, and the promise of the grantee, Avak went with the attorney to his office, where an agreement to reconvey the property in the event of the grantor's recovery was prepared, executed, and left in the custody of Mr. Gill. This document contained the following language: "I hereby admit that the delivery of the above described property, is on the condition that should my brother E. Garabedian recover from his present illness, and demand the return of his said property to him, I will so redeliver it to him; but in the event of his death, the transfer and delivery of said property is absolute."

Six days after this transaction the grantor died, and the grantee immediately recorded the deeds and assignment.

[1] Upon these facts the trial court found that the grantor duly delivered to the grantee the instruments of conveyance, and the custody of the personal property without reservation or condition, and with the intent to thereby divest himself of the title thereto; but that after the delivery and conveyance of title, the grantor requested and the grantee promised to execute an agreement to reconvey the property in the event that the grantor should recover from his illness, but that he died on May 8, 1923, and that the defendant was the owner of the property described.

Realizing that he was afflicted with a fatal disease from which he expected to soon die, the grantor apparently intended to transfer all his property to his brother Avak, with whom he had lived on friendly terms for twenty-three years. With this purpose in view, he summoned his attorney and formally executed and delivered to his brother conveyances to all his property to take effect *inter vivos*. The transfer was accompanied with the manual custody of the personal property. The fact that he afterwards required a written agreement to reconvey the property in the event of his recovery in no way impairs the validity of the transfer.

[2]  The appellant contends that when the grantor used the following language to his brother: "I am going to deed to you . . . but, if I get well, you have to give back to me," meant that he was insisting that if he got well, the deeds and assignment must be given back to him.  However, in view of the careful explanation on the part of the attorney that he must make an absolute delivery of the deeds, and that he said to his brother, "whatever I've got, I'm going to give to you," and that the grantee immediately proceeded to prepare and execute an agreement to redeliver the *property*, and not the instruments, in the event of his recovery, leads us to conclude that the grantor intended to relinquish all control over the instruments when he handed them to his brother.  This interpretation of the language is more persuasive, since the grantor did not request the grantee not to record the instruments.  In fact he gave no instruction which would lead to an inference that he was reserving any control over the use or disposition of the instruments, after he delivered them.  Moreover, it should be remembered that these Armenians expressed themselves in English with difficulty.  The conduct of all the parties concerned indicates that the grantor intended to make an absolute delivery of the instruments.

[3]  In order to effectually transfer the title to land the delivery of a deed is absolutely essential.  The act of delivery is analogous to what was formerly termed *livery of seisin*.  Delivery is said to be the force that vitalizes the instrument of conveyance, without which it is entirely void.  The manual transfer of the deed alone is not sufficient.  It must be accompanied with an intent on the part of the grantor to relinquish all control over the instrument and to presently divest himself of the title.  (*White* v. *Hendley*, 185 Cal. 614 [198 Pac. 22]; *Follmer* v. *Rohrer*, 158 Cal. 755 [112 Pac. 544]; *Hotaling* v. *Hotaling*, 193 Cal. 368, 382 [224 Pac. 455]; *Duffy* v. *Duffy*, 71 Cal. App. 251 [235 Pac. 62].)

[4]  The intent with which the instrument is delivered is a question of fact to be determined from all the circumstances surrounding the particular transaction.  (9 Cal. Jur. 153, sec. 52; 1 Devlin on Real Estate, 385, sec. 262; *Hefner* v. *Sealey*, 175 Cal. 18 [164 Pac. 898]; *Hotaling* v. *Hotaling*, 193 Cal. 368 [224 Pac. 455].)

It is now a settled rule of evidence in this state that the intent with which a grantor delivered a deed of conveyance may be shown by oral testimony. (*De Cou* v. *Howell,* 190 Cal. 741 [214 Pac. 444]; *Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]; *Cummings* v. *Eiszler,* 70 Cal. App. 67 [232 Pac. 723].)

[5] The question of the existence of the intent on the part of the grantor to divest himself of title and relinquish all control over the instrument when he delivered it is one of fact to be determined by the trial court or jury. Where there is a conflict of evidence as to the intent the finding of the trial court is controlling. (*Moore* v. *Trott,* 162 Cal. 268 [122 Pac. 462]; *Hefner* v. *Sealey,* 175 Cal. 18 [164 Pac. 898]; *Sherman* v. *Sandell,* 106 Cal. 373 [39 Pac. 797]; *Smith* v. *Flynn,* 64 Cal. App. 218 [221 Pac. 384]; *Duffy* v. *Duffy,* 71 Cal. App. 258 [235 Pac. 62].)

[6] The appellant contends that there is no evidence of acceptance of the deeds of conveyance by the grantee. But the burden is on him who denies a valid transfer to one who holds a deed of conveyance to real property to show by a preponderance of the evidence that there was no conveyance or acceptance. The possession of a deed by a grantee, or those holding under him, is *prima facie* evidence of both delivery and acceptance. (8 R. C. L. 999, sec. 62; 2 Tiffany on Real Property, 1750, sec. 461; *Stewart* v. *Silva,* 192 Cal. 405, 409 [221 Pac. 191]; *Ward* v. *Dougherty,* 75 Cal. 240 [7 Am. St. Rep. 151, 17 Pac. 193].)

[7] Where the grantor delivers a deed to his grantee, with the intent that it shall convey title only in the event that the grantor shall fail to survive a contemplated operation, the delivery is governed by the provisions of section 1056 of the Civil Code, and becomes absolute and final. (9 Cal. Jur. 166, sec. 61; *Fisher* v. *Fisher,* 23 Cal. App. 310 [137 Pac. 1094].) Section 1056 of the Civil Code provides: "A grant cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery was made."

The facts in the case of *Duffy* v. *Duffy,* 71 Cal. App. 251 [235 Pac. 62], are strikingly similar to those of the instant case. In that cause the grantor was about to undergo a dangerous operation for cancer of the throat, which the

79 Cal. App.—49

doctor warned him might prove fatal. Thereupon, he executed a deed of conveyance to his brother and sister, with the object, in the event of his death, of saving the expense of probating the will. Evidently he expected to procure a reconveyance of the property, in case he survived the operation. He delivered the deed to the grantees, saying: "I give you and Bill my property, if I get well, you will give it back?" To which the sister replied, "Oh, yes." It does not appear that the operation was performed, but within five months thereafter he died. The trial court held this to be an unconditional delivery of the deed and a present transfer of title. That judgment was affirmed by the district court of appeal and a rehearing denied by the supreme court.

For the foregoing reasons this judgment is affirmed.

Plummer J., and Finch, P. J., concurred.