[Civ. No. 1976. Fourth Appellate District.—July 24, 1936.]

GRACE E. HARALSON, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation), as Executor, et al., Respondents.

Solon S. Kipp and Virgil S. Kipp for Appellant.

Stanford & Yale for Respondents.

BARNARD, P. J.—In this action to quiet title to two lots in Ocean Beach the plaintiff claims under a grant deed to herself and one David Conroy as joint tenants, which deed has been lost or destroyed and was never recorded. The defendants claim under another deed from the same grantor to Conroy alone and under Conroy's will. From a judgment in favor of the defendants the plaintiff has appealed.

It appears from the evidence that in December, 1925, one Hollycross agreed to sell his equity in these lots to Conroy

and the appellant, whose name then was Grace E. Smith. On or about the 8th day of that month Hollycross and his wife signed and acknowledged a deed purporting to convey the property to Conroy and the appellant as joint tenants. All of the consideration was then paid by Conroy except a balance of $28 or $38. At that time the two grantees named in the deed were engaged to be married. Immediately thereafter the appellant purchased a small house with money given her by Conroy, and moved it onto these lots. They built a small porch and made other alterations in the house. Between December 9, 1925, and December 23, 1925, several permits were issued for such alterations and for the installation of plumbing and electrical equipment. Some of these were issued to each of the grantees named in the joint tenancy deed. Some of the bills for these alterations were paid by each of these parties but the money for all of them was furnished by Conroy. The house was insured in both of their names. When the repairs were completed the appellant took possession of the house. After living there three weeks an argument arose between her and Conroy as a result of which they "broke up" and abandoned their marriage plans. The appellant left the house between the 10th and 15th of January, 1926, and Conroy moved in and lived there until he died, on July 14, 1933. On October 13, 1926, Conroy paid to Hollycross the balance owing on the purchase price of the lots and received from him a deed naming Conroy as the sole grantee, which deed was recorded. In his will Conroy left all of his property to the individual respondents.

The appellant thus states the only question raised: "The question involved in the case is: Was the joint tenancy deed delivered?" ■ An important and necessary element in the transfer of real property is the delivery of a conveyance with intent to transfer the title. (*Duffy* v. *Duffy,* 71 Cal. App. 251 [235 Pac. 62]; *Williams* v. *Kidd,* 170 Cal. 631 [151 Pac. 1, Ann. Cas. 1916E, 703].) The question of delivery is one of fact and the finding of a trial court on such a question, based on conflicting evidence, will not be disturbed on appeal. (*Duffy* v. *Duffy, supra; Donahue* v. *Sweeney,* 171 Cal. 388 [153 Pac. 708].)

■ The appellant and one other witness testified that after the joint tenancy deed was acknowledged it was handed

to Conroy, one of the grantees named therein, with instructions to put it in escrow in a certain bank. The appellant testified that Conroy said he would put the deed in that escrow and that she never saw it thereafter. On the other hand Hollycross testified, "It was my intention, when I went to Mr. Thomas and went through the formality of drawing this deed, to the Notary's and acknowledging it, it was my intention not to deliver that deed to anyone—not unless she married him." He further testified that after acknowledgment the deed was handed to him and not to Conroy; that the notary handed it direct to him; that "I was holding it because I had not been paid the balance of the money which was what I was holding it for"; that "I hung onto the deed and never delivered it because Conroy did not pay me the rest of the money; he said he was not going to pay it as long as everything went the way it was"; that he kept possession of the deed; that "I never intended to deliver it until—was not intending to—until he gave me the money"; that "I'd still have it if I hadn't got my money"; that "I sold the lots to Grace E. Smith and David Conroy, provided Grace would marry David Conroy"; that "Mrs. Smith came over to our house and said she was all through with the whole works"; that later Conroy came to him and wanted another deed; that Conroy paid him the balance of the money due him; that he did not deliver the joint tenancy deed to Conroy when he paid the balance of the money "because it was an agreement between him and I"; and that at the time he delivered the new deed to Conroy he gave him the joint tenancy deed and "He said he would destroy it."

The question whether the joint tenancy deed was delivered was one of fact. The intention of the grantor both at the time the instrument was executed and acknowledged and when he handed it to Conroy some ten months later was material and important. The trial court has resolved the question of delivery in favor of the respondents, and the evidence, while conflicting, supports the findings.

The judgment is affirmed.

Jennings, J., concurred.

Marks, J., and Turrentine, J., pro tem., deeming themselves disqualified, did not participate herein.